[Civ. No. 12766.   First Dist., Div. One.   Jan. 31, 1945.]

G. E. WADE, as County Clerk, etc., Appellant, v. BOARD OF ADMINISTRATION OF THE ALAMEDA COUNTY EMPLOYEES' RETIREMENT SYSTEM et al., Respondents.

J. Paul St. Sure and Edw. H. Moore for Appellant.

Ralph E. Hoyt, District Attorney, R. Robert Hunter, Assistant District Attorney, and Stanley C. Smallwood and Douglas R. Dunning, Deputies District Attorney, for Respondents.

KNIGHT, J.—Pursuant to the authority granted by section 14 of the Alameda County Charter, authorizing the establishment of a retirement system for the benefit of "county employees," the board of supervisors passed an ordinance, which was approved by a vote of the electors, setting up such a system. The plaintiff herein holds an elective office in the county, namely, that of county clerk; and he brought this action for declaratory relief against the Board of Administration of the Alameda County Employees' Retirement System for the purpose of obtaining a judicial determination as to whether an elective county officer is eligible to membership in the retirement system. The trial court held on demurrer that he was not, and the demurrer was sustained without leave to amend. From the judgment of dismissal entered thereon plaintiff appeals.

Section 14 of the charter was approved by the electors on November 6, 1928. The pertinent provisions thereof read: "The Board of Supervisors, if deemed expedient, may provide, after actuarial investigation, by ordinance adopted by a four-fifths vote, for the purchase of annuities or insurance for County *employees,* or for an annuity or insurance fund, the basis of which in whole or in part, shall be contribution by the employees to be benefited. . . ." (Italics ours.) The ordinance adopted pursuant to the foregoing section of the charter was passed by the board of supervisors on October 6, 1934, approved by the electors at the general election held on November 6, 1934, and became effective January 1, 1935. By its terms it creates an Alameda County Employees' Retirement Fund and establishes a board of administration to administer it. (§§ 4, 5(a).) The board determines all questions relative to the eligibility of members. (§ 5(c).) All

persons "who are employees" of the county on January 1, 1935, are declared to be members of the system and "all persons entering the employ" of the county on or after that date shall automatically become members of the system upon the date of their employment. (§ 6(a).) Section 2(c) defines the word "employee" as meaning "any person in the employ of the County of Alameda whose compensation in such employment is paid wholly by the County." Part time and seasonal employees, institutional inmates and persons in institutions primarily for training purposes are excluded from membership (§§ 6(d), 9(e)), and persons receiving not more that $95 a month may elect to be exempt. Members contribute to the fund 5 per cent of the amount of compensation not exceeding $250 a month, and department heads certify the amount of contributions to the auditor. The contributions of the members to the retirement fund are matched by the county. (§ 8.) Retirement may be had after ten years' service provided the member has reached the age of sixty years. At age seventy retirement is compulsory. (§ 10.) Members may retire for superannuation, with the amount of allowance based upon age at retirement and length of service (§ 11), and for disability (§ 12). Provision is also made for return of contributions upon death occurring prior to retirement, and for reinstatement. (§§ 14, 15.) The system is designed to be self-sustaining through the equal contributions of the members and the county, and if it becomes actuarially unsound necessary reductions must be made in benefit payments. (§ 16.)

Plaintiff's salary as county clerk is wholly paid by the county; and in April, 1943, he certified that the sum of $12.50 should be deducted from his April salary as his contribution for the month to the retirement fund. At the same time he tendered such additional sums as he claimed were theretofore due from him as contributions to the retirement fund. The certification and tender were rejected by the board on May 24, 1943, and on March 9, 1944, plaintiff brought the present action.

So far as the record shows, prior to the proceeding taken by plaintiff in April, 1943, none of the elected officers of the county sought the benefit of the retirement system. However, at the general election of November 8, 1938, there was submitted to the voters of the county a charter amendment which

if adopted would have added to the charter a new section to be numbered 14½ whereby all elective county and township officers would have been, by the express terms of the proposed amendment, included in the retirement system. The electors rejected the proposed amendment; and two years later at the general election of November 5, 1940, a charter amendment in the same form as the one rejected in 1938 was submitted to the electors of the county, and likewise it was rejected.

■ It is agreed that the authority of the board of supervisors to set up a retirement system is derived solely from and must be measured by the provisions of section 14 of the charter; and it is our conclusion that the trial court's decision must be sustained upon the ground that the words "county employees" as used in that charter section cannot be construed to include county elective officers. Such doubtless was the construction placed thereon by the proponents of the charter amendments which were submitted to and rejected by the electors in 1938 and again in 1940; otherwise it would not have been necessary to have enacted an additional charter section to cover elective officers. Moreover, the rejection of the proposed amendments by the voters at the two elections clearly signified two things, that the voters construed section 14 as excluding elective officers from the retirement system, and that they believed that the charter should not be amended so as to include elective officers.

However, aside from the foregoing considerations, an examination of other sections of the charter shows that nowhere therein is the word "employee" so used that it can be interpreted to include elective officers. In other words, nowhere does the charter use either the word "employee" or any other collective term as including both elective officers and other persons in the service of the county, even in those portions of the charter where the same provisions are applicable to both, and a collective term could have been used. For example section 12(b) gives the board of supervisors authority to provide compensation for "elective and appointed officers, assistants, deputies, clerks, attaches and employees," and contains other provisions not material here. Section 12(f) authorizes the board of supervisors to require "any county or township officer or employee to give bond," to insure faithful performance of his duties. Section 19 provides that all officers, boards and commissions collecting fees "and all officers or employees collecting or receiving any moneys" shall make

regular settlement with the county treasurer. Section 65 provides that "All officers, assistants, deputies, clerks, attaches and employees" are allowed necessary traveling expenses. Section 66 provides that "No elective or appointive officer or employee who receives compensation as such" shall hold certain other specified offices; also that "No officer or employee shall be interested" in contracts with the county; also that "No officer or employee shall receive any commission . . . from or by reason of any dealings with . . . the County; . . ." also that "It shall be the duty of every officer and employee" to report violations of section 66.

As will be noted from the above sections, in no instance, although several opportunities so to do were presented, does the charter use the word "employee" to include elective public officials, but always employs the word "officers" or "elective officers" when elective public officials were intended to be included. That being so, it would be manifestly unreasonable to single out section 14 of the charter and hold that the term "employees" as there used was intended to include elective officers.

■ Plaintiff calls attention to two charter sections wherein the word "employee" is used in such a way as of necessity to include *appointive* officers, and he argues that since the word is given different meanings in various sections, it is impossible to determine the meaning of the word as it is used in section 14 by referring to other sections wherein it is used; that the word must be interpreted only in the light of the particular section in which it is used. It is a well settled rule of statutory construction, however, that in order to give proper interpretation to certain words or phrases used in one part of an act or statute, the entire act or statute may be examined to ascertain the meaning of the words or phrases giving rise to the controversy. Applying that rule of construction to the situation here presented, it is reasonable to assume that if it had been the intention to include elective officers in the retirement system authorized by section 14, that section would have been worded the same as the other sections of the charter above referred to, by mentioning both officers and employees.

■ Plaintiff argues that the use of the word "employee" signifies employment, that the word "employment" is a generic term, which may be properly defined as "the use of one's services"; and that such being the case every public

office is an employment and every elective officer must of necessity be an employee. In support of the above argument plaintiff cites the cases of *Patton* v. *Board of Health,* 127 Cal. 388 [59 P. 702, 78 Am.St.Rep. 66] ; *White* v. *City of Alameda,* 124 Cal. 95 [56 P. 795] ; and *Empey* v. *Yost,* 182 Wash. 17 [44 P.2d 774]. There would appear to be three answers to this argument. In the first place, while it is true that in some relationships an officer may be considered an employee, the particular question here to be determined is whether an elective officer may be considered an "employee" within the meaning of section 14 of the charter; and for the reasons herein given it is our opinion that it may not be so held. Secondly, the courts of this state in dealing with the question of the legal status of public officers and employees have drawn a clear distinction between the two, which governs in most cases, unless it clearly appears from the context or special definition that a different meaning was intended. (See *Coulter* v. *Pool,* 187 Cal. 181 [201 P. 120] ; *Foucht* v. *Hirni,* 57 Cal.App. 685 [208 P. 362] ; *Couts* v. *County of San Diego,* 139 Cal.App. 706 [34 P.2d 812] ; *Patton* v. *Board of Health, supra; People* v. *Wheeler,* 136 Cal. 652 [69 P. 435].) Here the charter contains no definition of an employee, nor have we found anything in the context that would justify the conclusion that the word "employee" as used in section 14 of the charter was intended to include also the elective officers of the county. The third answer is that nowhere in the charter is the word "employee" used in connection with elective officers. As shown in detail in defendants' brief, it is used in numerous places in the charter in connection with deputies, assistants, attachés and other employments, but at no place, so far as our attention has been called, is it implied that an elective officer is employed.

Plaintiff cites two cases from foreign jurisdictions (*Kelly* v. *Loveland,* 141 Pa.Super. 455 [15 A.2d 411] ; *Russell* v. *Secretary of Commonwealth,* 304 Mass. 181 [23 N.E.2d 408]) ; but they are not in point for the reason that in each of them the statute or ordinance the court was called upon to construe contained a definition of the word "employee," and the decisions therein were based on such definition; whereas here section 14 of the charter contained no definition of the words "county employees."

In further support of his basic contention that as an elected public officer he is entitled to the benefits of the retire-

ment system plaintiff cites cases to the effect that the rule in this state for the construction of retirement and pension statutes is one of liberality. Such is doubtless the law, but the rule of liberal construction does not go so far as to permit a court to rewrite the statute it is called upon to construe; and here, in order to sustain plaintiff's basic contention, it would be necessary to revise section 14 of the charter by inserting therein two words, so that the particular portion thereof in question here would then read "county officers and employees," instead of "county employees."

Plaintiff points out that the declared dual purpose of establishing the retirement system, as it is set forth in section one of the ordinance, is the promotion of the public economy and efficiency by retirement of incapacitated employees, and the recognition of a public obligation toward them by providing for retirement with compensation; and he argues that public economy and efficiency would be served just as well, if not more so, by the retirement of an incapacitated elective officer as by the retirement of his deputy or assistant, and that the justification and need for the care of elective officers, who have devoted many years of faithful service to a county, are just as compelling as in the case of the ordinary employee. This is an argument which might well be made in support of a movement for a legislative change in the provisions of section 14, but obviously such change may not be brought about by way of judicial construction.

We are of the opinion also that the provisions of the ordinance enacted pursuant to section 14 of the charter may not be so construed as to include elective officers within the retirement system; but in view of the construction placed on the enabling provisions of section 14 of the charter an analysis of the ordinance provisions becomes unnecessary, since in any event the board of supervisors, in the enactment of the ordinance, would have exceeded its power if it had attempted to go beyond the scope of the enabling provisions of section 14 of the charter.

As we have said, the action herein is for declaratory relief, and the appeal is from a judgment of dismissal entered pursuant to an order sustaining the demurrer to the amended complaint without leave to amend. In view of the decision rendered in the recent case of *Maguire* v. *Hibernia Savings & Loan Society*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062], which was decided but not reported at the time of the ruling

on demurrer herein, the parties to this appeal have filed a written stipulation to the effect that for the purposes of this appeal this court may consider the judgment of the superior court an adjudication on the merits that plaintiff is not entitled to membership in and has no rights against or with reference to the Alameda County Employees' Retirement System, and that the amended complaint to which the demurrer was sustained may be considered as an agreed statement of facts upon which the judgment was based; accordingly this has been done in determining the appeal.

Whatever remaining arguments may have been made in support of the appeal are only incidental to those already noticed, and are deemed to be without merit.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied March 2, 1945.