[Civ. No. 1741. Fifth Dist. Jan. 21, 1974.]

J. DELBERT NEELEY et al., Plaintiffs and Respondents, v.
BOARD OF RETIREMENT OF FRESNO COUNTY,
Defendant and Appellant.

---

**COUNSEL**

Robert M. Wash, County Counsel, and Max E. Robinson, Deputy County Counsel, for Defendant and Appellant.

Lawrence W. Young and Robert L. Young for Plaintiffs and Respondents.

---

**OPINION**

**BROWN (G. A.), J.**—County of Fresno employees are covered by the provisions of the 1937 County Employees Retirement Law (Gov. Code, § 31450 et seq.), including, as of January 1, 1970, safety membership by certain persons employed by the sheriff's office. Set forth in the margin are three sections of the Government Code germane to the determination of persons who fall in the category of safety members.[1]

---

[1]Government Code section 31469.3 provides in pertinent part: " 'Safety member' means any person who is . . . (b) . . . employed by a county . . . or by a district or court organized or existing within such a county, whose principal duties consist of active law enforcement or active fire suppression as described in Sections 31470.2 and 31470.4, or active lifeguard service as limited by Section 31470.6 or juvenile hall group counseling and group supervision if adopted by the board of supervisors as provided in Section 31469.4."

Government Code section 31470.2 provides: "All sheriffs, undersheriffs, chief deputies sheriff, jailers, turnkeys, deputies sheriff, bailiffs, process servers, constables, deputies constable, motorcycle officers, aircraft pilots, heads and assistant heads of all divisions of the office of the sheriff, detectives and investigators in the office of the district attorney, marshals and all regularly appointed deputies marshals are eligible."

Government Code section 31470.3 provides: "Clerks, bookkeepers, stenographers, and other employees who may have been appointed as deputies sheriff or deputies marshal but who do not perform the duties of any of the peace officers enumerated and honorary deputies sheriff or other persons holding appointments as deputies sheriff who receive no compensation therefor who do not regularly perform official duties and those whose principal duties clearly do not fall within the scope of active law enforcement, even though such a person is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement are ineligible."

In addition to other distinctions from persons in the regular public service, an employee who is classified as a safety member is entitled to earlier eligibility for retirement (Gov. Code, §§ 31662.4, 31671) and a person who is older than 35 years at the time he is hired cannot be initially employed as a safety member. (Gov. Code, § 31558.)

Respondents are two persons employed in the Fresno County Sheriff's office with a civil service classification of Identification Technician II. The appellant, Board of Retirement of the County of Fresno (hereinafter "Board of Retirement"), after a hearing denied their applications for classification as safety members for the purposes of the retirement law. Respondents thereupon petitioned the superior court in administrative mandamus pursuant to Code of Civil Procedure section 1094.5 for review of the Board of Retirement's decision. The cause was submitted to the lower court upon the record of proceedings before the Board of Retirement. The court granted a peremptory writ of mandate ordering the Board of Retirement to declare respondents to be safety members. The Board of Retirement has appealed.

Findings of fact and conclusions of law were not requested and were thereby waived.

Attached as Appendix "A" is the job description of Identification Technician II, and as Appendix "B" are the descriptions of duties actually performed by respondents Neeley and Barnes, respectively, as they set them forth in a county-wide classification survey.[2]

Both respondents were initially employed as deputies sheriff, Barnes in 1942 and Neeley in 1949. Each was sworn as a deputy sheriff and each carried a badge. Each became involved in criminal identification work and each attained the rank of sergeant. In 1963 their civil service classification was changed from sergeant to Identification Technician II. However, despite that change, each remains sworn as a deputy sheriff and each continues to carry a badge and identification card as a deputy sheriff, though their duties as identification technician have continued unaffected by the change in classification.

Their work is done inside, it not being necessary to go outside to gather evidence which they analyze and classify. Their work is highly technical

---

[2]Although the job description on Appendix "A" does not differ materially from the duties which respondents actually perform (see Appendix "B"), respondents' ultimate status should be determined based on the duties they actually perform and not the duties listed on the job description. (*Kimball* v. *County of Santa Clara* (1972) 24 Cal.App.3d 780, 785 [101 Cal.Rptr. 353]; see also *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567 [108 Cal.Rptr. 293].)

and each has been graduated from numerous training schools. Their job description does not require that they come in personal contact with the prisoners, and in fact they rarely do so.

Though respondents cannot be put back into patrol cars on a permanent basis absent a complete reclassification, they are required to take the same physical examination as safety members, and they are subject to 24-hour emergency call and have to qualify each year with handguns, rifles, shotguns, batons and other weapons. Respondents have been called out in emergencies in the past, such as the 1968 Fresno riots and the July 4, 1970, riots in Yosemite when "bus loads of hippies" were brought in from Yosemite for booking.

In reviewing the decision of the Board of Retirement by administrative mandamus pursuant to Code of Civil Procedure section 1094.5, the trial court and this court are bound by the substantial evidence rule (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149 [93 Cal.Rptr. 234, 481 P.2d 242]; *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 592 fn. 11 [100 Cal.Rptr. 16, 493 P.2d 480]), the function of the trial and appellate courts being to determine if the record is free from legal error (*Griggs* v. *Board of Trustees* (1964) 61 Cal.2d 93, 96 [37 Cal.Rptr. 194, 389 P.2d 722]). In this instance, however, as the trial judge noted, there was no substantial conflict in the evidence regarding the duties of the respondents and the relationship of those duties to law enforcement. Accordingly, the proper interpretation of the statutory language is a question of law for the court and we are not constricted in this regard by the conclusions of the trial court. (Evid. Code, § 310; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839], cert. den., 365 U.S. 823 [5 L.Ed. 2d 700, 81 S.Ct. 708]; *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 576-577 [108 Cal.Rptr. 293]; *Noroian* v. *Department of Administration* (1970) 11 Cal.App.3d 651, 654 [89 Cal.Rptr. 889].)

In construing the statute, the primal principle of statutory construction requires the ascertainment of the intent of the legislative body. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) When, as here, there is no direct evidence of the legislative intent, the court turns first to the words of the enactment for the answer and may also rely upon extrinsic aids. (*People* v. *Knowles* (1950) 35 Cal. 2d 175, 182-183 [217 P.2d 1], cert. den., 340 U.S. 879 [95 L.Ed. 639, 71 S.Ct. 117]; *In re Miller* (1947) 31 Cal.2d 191, 198-199 [187 P.2d 722].)

Referring to the applicable statutory provisions (see fn. 1, *supra*),

it is readily apparent that the key phrase is "active law enforcement." Section 31469.3, subdivision (b), uses the phrase in defining a safety member, and section 31470.3 excludes deputies sheriff[3] whose "principal duties clearly do not fall within the scope of active law enforcement, even though such a person is subject to occasional call, or is occasionally called upon, to perform duties within the scope of active law enforcement . . . ."

The Board of Retirement decided respondents are not engaged in active law enforcement, and the trial court held they are. ■ Great weight should be given to the administrative interpretation of the Board of Retirement unless clearly erroneous. (Gov. Code, § 31470.8; *Rivera v. City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

At the time the learned trial judge rendered his decision he did not have the benefit of any judicial guidance. This court, however, is more fortunate in that two recent cases have interpreted the phrase "active law enforcement" in connection with analogous provisions in other statutes.

In *Crumpler v. Board of Administration, supra,* 32 Cal.App.3d 567, the court interpreted the meaning of the phrases "active law enforcement" and "whose functions do not clearly fall within the scope of active law enforcement service" under the Public Employees Retirement System (Gov. Code, §§ 20019, 20020). In that case the respondent employees were animal control officers whose principal duties involved the enforcement of state and local laws pertaining to the licensing control and maintenance of animals. In performing these duties, they sometimes used marked police vehicles with police radios and were occasionally called on to serve as backup units at the scenes of crimes. They were issued identification cards and badges, wore policemen's uniforms and were required to carry and be trained in the use of firearms. After a hearing, the Board of Retirement determined that they were not entitled to safety member status and accordingly had them reclassified into "miscellaneous membership." They sought a writ of mandate in the superior court. The writ was granted and the board appealed. The court of appeal reversed, holding that the applicants' principal duties did not fall within the scope of active law enforcement. The court stated: "The provision of a special

---

[3]Appellant argues that since 1963, the date of respondents' civil service reclassification from sergeant in the sheriff's department to Identification Technician II, respondents have not in fact been deputies sheriff and thus are not eligible in any event under sections 31469.3 and 31470.2 to become safety members notwithstanding the fact that they continue as deputies in the sheriff's department, they wear badges and carry identification as deputies and are subject to emergency call as deputies. In view of our decision that respondents are not engaged in active law enforcement, it is unnecessary to pass upon this question.

category of retirement membership for policemen relates to the hazardous nature of their occupation. [Citation.] The phrase 'active law enforcement service' as used in section 20020 was no doubt intended to mean law enforcement services normally performed by policemen. As the Attorney General has suggested, it means the active enforcement and suppression of crimes and the arrest and detention of criminals. [Citation.] In a loose sense animal control officers are engaged in active law enforcement but so are a myriad of other public employees such as building inspectors, health officers, welfare fraud investigators and the like but their duties can hardly be said to constitute 'active law enforcement service' as contemplated by the statute. The crimes with which policemen normally deal are those against persons and property and not violations of police regulations. Petitioners' duties as animal control officers cannot be said to 'clearly fall within the scope of active law enforcement service' as that term is used in section 20020. The board's determination that petitioners were improperly classified as local safety members must be upheld." (32 Cal.App. 3d at pp. 578-579; fn. omitted.)

In *Kimball* v. *County of Santa Clara* (1972) 24 Cal.App.3d 780 [101 Cal.Rptr. 353], a correctional officer at the county jail applied for disability benefits as a safety member under Labor Code section 4850. That section, like the ones here involved, excluded employees whose principal duties "do not clearly come within the scope of active law enforcement service. . . ." It was uncontroverted that the applicant's principal duties involved the supervision of inmates, the detection of criminal activities within the facility, the confiscation of contraband materials, the arresting of criminal offenders inside the facility, prevention of escapes and related functions which put him in daily, continuous contact with the prisoners. The court held that the applicant's duties were well within the scope of active law enforcement since his duties were as equally hazardous as those of regular policemen who serve the general public. In so holding, the court adopted the following language from 51 Ops.Cal.Atty.Gen. 32, 34: " 'The reason for such exceptional treatment for policemen and firemen is obvious: not only are their occupations particularly hazardous, but they undertake these hazards on behalf of the public. The Legislature undoubtedly sought to ensure that policemen and firemen would not be deterred from zealous performance of their mission of protecting the public by fear of loss of livelihood.' [Citation.]" The court then said: "It cannot be seriously contended that the supervision of prison inmates is any less hazardous than the supervision of the general public by policemen. Detection of criminal activity within the walls of a prison cannot be functionally distinguished from the detection of criminal activity in society. Fellow correctional

officers and prison inmates are entitled to the same expectation as the general public with respect to protection against criminal attack. It follows that correctional officers should not be deterred from zealous performance of their mission by fear of loss of livelihood. It would therefore serve the apparent intent of the Legislature to find that plaintiff is entitled to the benefits provided by section 4850." (24 Cal.App.3d at p. 785.) (See also 22 Ops.Cal.Atty.Gen. 227; 56 Ops.Cal.Atty.Gen. 369.)

These authorities are decisive of the principal issue in this case. While respondents' activities are related to and essential to law enforcement, they are not active law enforcement. Respondents are technical, administrative and support personnel for those officers who are on the firing line. Active law enforcement implies hazardous activity. Respondents' duties are not hazardous, do not place them in contact with prisoners on any regular basis and, aside from infrequent emergency service which is specifically excepted under section 31470.3, consist of classifying and researching fingerprints and photograph files and involvement in other highly technical identification techniques. These duties do not expose them to hazards from prisoner conduct or risks of injury from such sources or the necessity of being physically able to cope with potential dangers inherent in the arrest, detention and handling of prisoners. The age limitation for service as a safety member (Gov. Code, § 31662.4) clearly suggests a legislative intent that such members be young, agile and able to respond to violence and danger (see 56 Ops.Cal.Atty.Gen. 369, 372) and that their principal duties concern physically active work, such as the arrest and detention of criminals, which exposes such officers and employees to physical risk in the law enforcement field. (See 22 Ops.Cal.Atty.Gen. 224, 229.)

We are not unmindful of the well-established rule that pension legislation, such as that here involved, should be liberally construed, resolving all ambiguities in favor of the applicant. (*Gorman* v. *Cranston* (1966) 64 Cal.2d 441, 444 [50 Cal.Rptr. 533, 413 P.2d 133]; *Adams* v. *City of Modesto* (1960) 53 Cal.2d 833, 840 [3 Cal.Rptr. 561, 350 P.2d 529]; *Dunham* v. *City of Berkeley* (1970) 7 Cal.App.3d 508, 513 [86 Cal.Rptr. 569].) However, this rule of liberal construction is applied for the purpose of effectuating the obvious legislative intent (*McKeag* v. *Board of Pension Commrs.* (1942) 21 Cal.2d 386, 390 [132 P.2d 198]) and should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended. (See *Firemen's Benevolent Assn.* v. *City Council* (1959) 168 Cal.App.2d 765, 768 [336 P.2d 273]; *Stamper* v. *City of Los Angeles* (1947) 80 Cal.App.2d 242, 244 [181 P.2d 687]; *Wade* v.

*Board of Administration* (1945) 67 Cal.App.2d 745, 751 [155 P.2d 394]; *Todd* v. *McNichols* (1941) 44 Cal.App.2d 448, 452 [112 P.2d 675]; *Klench* v. *Board of Pension Fd. Commrs.* (1926) 79 Cal.App. 171, 187 [249 P. 46].)

The judgment is reversed and the trial court is directed to deny respondents' petition for writ of mandate.

Gargano, J., and Franson, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 20, 1974. Mosk, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.

---

APPENDIX "A"

The following is the job description for Identification Technician II:
"DEFINITION:
"Under general supervision, does skilled technical work of criminal identification; and performs related work as required.
"DISTINGUISHING CHARACTERISTICS:
"This is the experienced level of the technical area of criminal identification. This class is distinguished from the lower class of Identification Technician I in that the Identification Technician II is concerned with the more skilled aspects of criminal identification, requiring independent action and individual judgment. The Identification Technician I is primarily involved in the more routine tasks of photographing and fingerprinting prisoners.
"EXAMPLES OF DUTIES:
"1. Evaluates, analyzes, and indexes information from crime reports to classify crimes and criminals according to their modus operandi.
"2. Classifies and files fingerprint cards and handwriting exemplars.
"3. Searches files and compares fingerprints and handwriting exemplars with those from crime scene.
"4. Maintains files of data for identification of automobiles, guns, and stolen property.
"5. Maintains files of crime specialties and identifying characteristics of known criminals in the local area.
"6. Conducts searches of files to develop possible leads on unsolved crimes and to develop possible suspects.
"7. Assists in preparation of evidence for trial purposes.
"8. May testify in court regarding criminal identification.
"9. Keeps detailed records of criminal cases.
"10. Writes reports."
James D. Long, undersheriff and executive officer of the sheriff's department, testified that the announcement of the qualifications for the job gave the following specifications:
"Under general supervision, does skilled technical work of criminal identification. Performs technical law enforcement activities. Has supervisory responsibilities for an assigned area of activity in the Sheriff's Department. Performs related work as required.

"May be assigned to work in a specialized technical function as Identification Division, modus operandi, records, training, public relations, and so forth. Sheriff's Identification Technician may be delegated first level supervisory duties."

The job description for Identification Technician I includes the actual fingerprinting, handprinting and photographing of prisoners.

APPENDIX "B"

DESCRIPTION OF DUTIES IN APPLICATION OF RESPONDENT J. DELBERT NEELEY:

"I classify, search and file fingerprint cards.

"I standardize fingerprint cards and guides into proper grouping and sequence for ease and efficiency in filing and searching.

"I classify and file handwriting exemplars.

"I check and review criminal fingerprint cards for proper information, correct charge and disposition.

"I compare and give confirmation on positive print comparison of latents to original sets of fingerprints, to establish identity on both criminal and non-criminal subjects.

"I instruct in the study of Dactylography (science of using fingerprints as a means of identification) to Jr. Identification Technicians, college students working for scholastic credits, and department personnel who need or should require this knowledge.

"I assist others and perform duties as required by the Officer in Charge of the Division of Identification."

DESCRIPTION OF DUTIES IN APPLICATION OF RESPONDENT MACE T. BARNES:

"I supervise the work of the personnel in the Identification and Modus Operandi Sections and co-ordinate the flow of work within their sections.

"I check personnel for efficiency and work load, and the maintenance of a complicated crime-file system.

"I make decisions concerning application of policies of this section as prescribed by the Captain of the Division of Identification.

"I evaluate the crimes based on their seriousness so that the more important fingerprint cards may be contributed to the State and Federal Bureau of Investigation.

"I fill-in and assist, as the work load demands, the Identification Technicians. This work includes classifying, searching and filing fingerprint cards, check and review fingerprint cards for correct information, and instructing junior identification technician."