[Civ. No. 52253. First Dist., Div. Two. July 22, 1983.]

ROBERT GUELFI et al., Plaintiffs and Appellants, v.
MARIN COUNTY EMPLOYEES' RETIREMENT ASSOCIATION et al.,
Defendants and Respondents.

COUNSEL

Paul S. Silver, Davis & Reno and Duane W. Reno for Plaintiffs and Appellants.

Douglas J. Maloney, County Counsel, and Thomas G. Hendricks, Assistant County Counsel, for Defendants and Respondents.

OPINION

SMITH, J.—This appeal from the denial of a petition for writ of mandate presents the question whether appellants, retired Police Officers Robert Guelfi and Steven Kane (petitioners below), are entitled, under the County

Employees Retirement Law of 1937 (Gov. Code, tit. 3, div. 4, ch. 3 (§ 31450 et seq.))[1] as subsequently amended (hereinafter CERL), to have their disability retirement payments calculated on the basis of preretirement earnings *including* amounts received for overtime, educational incentive pay and uniform allowance.

The County of Marin (County) has adopted CERL as the governing retirement law for its employees. Appellants are former deputy sheriffs for the County and former members of respondent Marin County Employees' Retirement Association (Association). They are disability retirees and are classified as "safety members" for purposes of retirement eligibility under CERL. (§§ 31469.3 and 31470.2.)

Respondents, the Association and the Board of Retirement of the Marin County Employees' Retirement Association (Board), are bodies vested with powers under CERL to manage the County's retirement system (§ 31520), including the responsibility of determining the amount of retirement allowance to which appellants are entitled.

During the respective years selected by appellants for purposes of defining their "final compensation" (§ 31462.1), upon which computation of retirement allowance is based (§ 31727.4), each received pay for certain unspecified hours of overtime worked, and received monthly uniform allowances and educational incentive pay. Respondents, however, computed appellants' disability retirement allowances according to a determination of "final compensation" which did not include such items of payment.

On November 29, 1979, appellants made a timely demand upon respondents that their retirement allowances be recalculated to include such payments. On January 14, 1980, after a hearing, respondents denied the demand. That denial was a final administrative decision.

On March 17, 1980, appellants filed a petition for writ of mandate in Marin County Superior Court, seeking to compel respondents to set aside their decision denying the demand, and to award benefits as demanded. An alternative writ issued.

On October 9, 1980, following the filing of findings of fact and conclusions of law the trial court entered judgment, denying the petition for peremptory writ and discharging the alternative writ. Appellants timely filed a notice of appeal from that judgment on December 2, 1980.

---

[1] All statutory section references hereinafter are to the Government Code unless otherwise indicated.

*Discussion*

Appellants contend that respondent Board is without authority under CERL to determine, as has been its practice, that overtime, uniform allowance and educational incentive pay are not to be included as part of "final compensation" for computing a member's retirement allowance; thus, they argue that the Board exceeded its authority or abused its discretion by adhering to that practice in this case. They similarly argue that certain regulations promulgated by respondent Association are beyond the Association's statutory authority and hence not a valid basis for the Board's action. Respondents counter that CERL leaves to each board of retirement the determination of whether to include the items of compensation here at issue in computing retirement allowances and that the Association's regulations are a valid implementation of that authority.

■   Since this dispute hinges on interpretation of statutory language and since there is no factual conflict (the case comes to us upon an agreed statement filed pursuant to rule 6 of the Cal. Rules of Court), we are confronted with a question of law (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839], cert. den., 365 U.S. 823 [5 L.Ed.2d 700, 81 S.Ct. 708]) and hence are not constricted by the conclusions of the trial court. (*Neeley* v. *Board of Retirement* (1974) 36 Cal.App.3d 815, 819 [111 Cal.Rptr. 841]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].) Accordingly, we turn directly to the relevant provisions of CERL.

Section 31727.4 provides in part that "[u]pon retirement of any member for service-connected disability, he shall receive an annual retirement allowance payable in monthly installments, equal to one-half of his *final compensation*. . . ." (Italics added.)

Section 31462.1, having been duly adopted by resolution of the Board of Supervisors for the County of Marin, was operative as to the County at all times here relevant. It provides in part: "'Final compensation' means the average annual *compensation earnable* by a member during any year elected by a member at or before the time he files an application for retirement, or, if he fails to elect, during the year immediately preceding his retirement. . . ." (Italics added.)[2]

Section 31461 in turn provides in part: "'Compensation earnable' by a member means the average *compensation* as determined by the board,[3] for

---

[2] Section 31455 states: "Unless the context otherwise requires, the definitions and general provisions contained in this article govern the construction of this chapter."

[3] Respondent Board is a "board" for purposes of CERL. (§ 31459.)

the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay. . . ." (Italics added.)

" 'Compensation,' " according to the pertinent part of section 31460, "means the remuneration paid in cash out of county or district funds . . . , but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member." The parties agree that amounts received by appellants for overtime, educational incentive pay and uniform allowance constitute remuneration paid in cash out of county funds for purposes of section 31460.

Initially, we observe that resolution of the question posed—i.e., whether respondents' method of computing appellants' retirement benefits was statutorily authorized—in no way turns on the validity of either of the challenged sections of the Association's regulations.[4] The first section (501(a)) merely parrots the definition of "compensation earnable" found in Government Code section 31461 and thus does not purport to expand respondents' statutory authority. The second section (501(b)), defining "compensation" as base pay for the purpose of computing member *contributions,* has no bearing on respondents' authority to so compute *retirement benefits.* There is therefore no need to test the validity of either section,[5] and we need only examine the statute.

■ The starting point for interpreting a statute is the language of the statute itself; when that language is clear and unambiguous, there is no need for construction. (*Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 726 [182 Cal.Rptr. 778, 644 P.2d 1257]; *Consumer Product Safety Comm'n* v. *GTE Sylvania* (1980) 447 U.S. 102, 108 [64 L.Ed.2d 766, 772, 100 S.Ct. 2051].) ■ Effect must be given to a statute

---

[4]Sections 501(a) and 501(b) of the regulations are challenged.

Section 501(a) states: "Compensation earnable for the purpose of computing retirement benefits shall be defined as the average compensation as determined by the Board for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same rate or class of positions during the period and at the same rate of pay."

Section 501(b) states in pertinent part: "Compensation for the purpose of computing contributions by each member shall be defined as the base pay for a one (1) month period for such member. . . ." Prior to a 1969 amendment, the section had defined compensation as "the gross amount paid to the employee."

[5]Appellants concede the irrelevance of the regulations and yet attack their validity as being in conflict with CERL. They further contend that a 1969 amendment of regulation section 501(b) (see fn. 4, *ante*) was void for failure to comply with the Meyers-Milias-Brown Act "meet and confer" requirement (Gov. Code, § 3505). Not only are those arguments irrelevant, but the "meet and confer" contention is improperly raised for the first time on appeal.

according to the usual and ordinary import of its language (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473]), and reference must be made to the entire statute in ascertaining the legislative intent. (*In re Ricky H.* (1981) 30 Cal.3d 176, 187 [178 Cal.Rptr. 324, 636 P.2d 13].) ■ Ambiguity or uncertainty in pension legislation, such as that involved here, is to be resolved in favor of the pensioner (*Rose* v. *City of Hayward* (1981) 126 Cal.App.3d 926, 940 [179 Cal.Rptr. 287]), but "this rule of liberal construction is applied for the purpose of effectuating the obvious legislative intent [citation] and should not blindly be followed so as to eradicate the clear language and purpose of the statute . . . ." (*Neeley* v. *Board of Retirement, supra,* 36 Cal.App.3d 815, 822.)

In our view, the statutory sections, taken together, set out a clear sequence for computing retirement benefits, beginning with a fairly broad definition of "compensation" (§ 31460) and progressing through the narrowing definition of "compensation earnable" (§ 31461) to arrive at "final compensation (§ 31462.1), which is then halved in the case of a disability retiree (§ 31727.4). It is therefore necessary to examine separately, and in the statutory sequence outlined above, each claimed item of payment here at issue.

### Uniform Allowance and Educational Incentive Pay

■ Under the statutory framework, only items of "compensation" as defined in section 31460 are to be considered in the Board's determination of "compensation earnable" (§ 31461) and computation of "final compensation" (§ 31462.1). The parties agree that uniform allowance and educational incentive pay constitute "remuneration paid in cash out of county . . . funds" for purposes of section 31460; so the next question is whether those conceded items of remuneration (which are not specifically itemized in the list of exclusions found in the same section) nonetheless fall within the general category of excluded "other advantages furnished to a member."

In *Rose* v. *City of Hayward, supra,* 126 Cal.App.3d 926, this panel, in interpreting the nearly identical language in Government Code section 20022 (defining "compensation" for purposes of the Public Employees' Retirement Law (Gov. Code, § 20000 et seq.)), concluded that an annual uniform allowance paid to public safety members (police officers and firefighters) was included in the section 20022 phrase, "other advantages . . .

furnished a member," reasoning that "the uniform substitutes for personal attire which the employee would otherwise be forced to acquire with personal resources." (*Rose,* at p. 943.) Upon the virtually indistinguishable facts of the instant case, we are compelled to conclude that the uniform allowance at issue here is similarly included in the section 31460 phrase, "other advantages furnished to a member," and hence properly excludable from the computation of retirement benefits.

Educational incentive pay, in contrast to uniform allowance, does not appear to represent the monetary value of an "advantage" furnished to a member and thus, in light of the parties' agreement that it is "remuneration paid in cash : ,. .,," must be considered "compensation" under section 31460. Such remuneration is paid monthly to deputy sheriffs such as appellants upon their successful completion of annual education and training requirements. The amount of pay and the extent of education and training required to qualify for such pay varies according to a deputy's certification. For the periods in question, appellants qualified for and received educational incentive pay in monthly amounts of $25 for appellant Guelfi and $50 for appellant Kane. The education and training thus furnished appellants is clearly designed to benefit the employer and would appear to be of marginal, if any, benefit or "advantage" to appellants since they would not need to undergo education and training but for their employment. (Cf. *Rose* v. *City of Hayward, supra,* 126 Cal.App.3d 926, 944.)

Having found that educational incentive pay is "compensation" in this case, the next statutory step is to determine whether it is "compensation earnable," meaning "the average compensation as determined by the board, for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay. . . ." (§ 31461.)

Appellants, who overlooked section 31461 in their opening brief, urge in their closing brief that the section merely calls upon the Board to make a rudimentary calculation of average compensation based on the year selected by the retiree and does not authorize the Board to determine which elements of compensation are to be included or excluded. They argue that the language of section 31461, "upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions . . . , and at the same rate of pay," is just the starting point of computation to which the Board must add all items of remuneration not specifically exclud-

ed from the section 31460 definition of "compensation." Such an interpretation, however, would effectively read section 31461 out of the statute, for the section 31462.1 definition of "final compensation" (the "average annual compensation earnable by a member during any year elected . . .") would, standing alone, seem to entitle appellants to what they want—benefits based on all actual "compensation" received during the qualifying year. If the Legislature had so intended, a separate statutory definition of "compensation earnable" would not have been necessary, and reference to the pay rate and days ordinarily worked by others would have been immaterial. Moreover, "final compensation" could have been defined in terms of compensation *earned* rather than compensation *earnable*.

█ "Courts should construe all provisions of a statute together, significance being given—if possible—to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. [Citation.]" (*Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 826-827 [129 Cal.Rptr. 443, 548 P.2d 1115]; fn. omitted.) And thus, in attempting to ascertain the intent of the Legislature, no part or provision of a statute should be rendered useless or deprived of meaning. (*Carleson* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 145, 155-156 [134 Cal.Rptr. 278].) █ Accordingly, appellant's argument must be rejected and section 31461 be read as vesting the Board with authority to determine, according to the guiding language contained therein, which elements of compensation constitute "compensation earnable" for purposes of inclusion or exclusion from the calculation of "final compensation."

Applying the section 31461 definition to educational incentive pay, we conclude, as did the Board, that such compensation is not "compensation earnable." The section defines that term as being based on the average number of days ordinarily worked by persons in "the *same grade or class of positions* . . . , and at the *same rate of pay*." (Italics added.) However, it is evident from the nature of the program as revealed upon this record, first, that not all persons in the same grade or class of positions will qualify for educational incentive pay and, second, that those in the same grade or class who do qualify may not hold the same certificates. Therefore, persons of similarly graded or classified positions are not compensated at the same rate of pay under the program, and section 31461 does not contemplate inclusion of such compensation in its definition of "compensation earnable."

Appellants rely upon *Dunham* v. *City of Berkeley* (1970) 7 Cal.App.3d 508 [86 Cal.Rptr. 569], in which the appellate court affirmed a judgment

that payments made to city police officers under senior patrolman and career incentive programs constituted "salary" under a city ordinance, for purposes of a "fluctuating" retirement plan. (Pp. 511, 517.) That case does not assist appellants, however, for it is conceded in the instant case that educational incentive pay is "compensation," the analogous term under CERL. The determinative issue here is whether that "compensation" falls within the narrowing definition of "compensation earnable." There was no analogous second definition under consideration in the *Dunham* case. Moreover, CERL creates a fixed rather than a fluctuating retirement plan, and the interpretation in *Dunham* was needed to effectuate the purpose of a fluctuating pension system in maintaining "equality of position between the retired member and the person currently holding the same rank." (Pp. 513-514; see *Abbott* v. *City of Los Angeles* (1960) 178 Cal.App.2d 204, 215-216 [3 Cal.Rptr. 127].)

### *Overtime*

Examining the last category of payment, overtime, we note again the parties' agreement that it is "remuneration" under section 31460. Because overtime pay is not expressly excluded under the section and because such pay does not represent the monetary value of any "advantage" furnished to a member, we must conclude that such pay is "compensation" and look to the definition of "compensation earnable."

Two obstacles in the definition prevent an interpretation which would include overtime pay. First, the Board must make its determination upon the basis of the number of "days" ordinarily worked. The choice of the word "days" rather than "hours" or some other temporal measure suggests reference to a standard work week (or month) and not to any extra hours put in as overtime. Appellants themselves view that language as clearly indicating an intent that the Board use the *day* as a unit of measure. Second, the Board is to base its determination on the number of days "ordinarily" worked by others of the same rank. In common usage, "ordinarily" means "in the ordinary course of events" or "usually." (Webster's Third New Internat. Dict. (1965) p. 1589.) *Omission* of the word "ordinarily" might suggest calculation based upon the *actual* number of days worked by others (assuming for sake of argument that whole days of overtime are worked), and even then, the basis would be the number of days worked by *others,* not the number of days personally worked by the retired or retiring member. However, the word is specifically inserted and must be read as qualifying the phrase which it precedes so as to give it meaning. We therefore conclude (again, consistently with the Board's determination) that overtime pay is not

"compensation earnable" and thus is not to be included in computing appellant's "final compensation."

Appellants contend that this court should employ the constructional rule that related statutes (those *in pari materia*) should be construed in light of one another (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 587 [146 Cal.Rptr. 859, 580 P.2d 274]) and that CERL should thus be construed together with the Public Employees' Retirement Law (Gov. Code, § 20000 et seq.) and the State Teachers' Retirement Law (Ed. Code, § 22000 et seq.), both of which expressly provide for the exclusion of overtime pay in calculating one's compensation (Gov. Code, § 20025.2; Ed. Code, § 22114, subd. (b)). Then, invoking the doctrine that where a statute, with reference to one subject, contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed (*City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 395 [341 P.2d 318]; *People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]), they argue that the omission of an overtime-excluding provision from CERL indicates an intent to require inclusion of overtime. ▮ However, the fundamental rule is that resort to extrinsic aids, including statutes *in pari materia,* in the construction of a statute is appropriate only where the statute, taken alone, is ambiguous or unclear. (2A Sutherland, Statutory Construction (3d ed. 1973) Interpretive Relevance of Related Statutes, § 51.01, pp. 287-290.) The statutory language in this case is clear and unambiguous. "The language expresses the intention of the Legislature in the premises [citation]; where free from doubt, ambiguity or uncertainty, leaves no room for construction [citation]; and must be followed even though it may appear from other sources the Legislature had a different object in mind. [Citations.]" (*Hernandez* v. *Imperial Irr. Dist.* (1967) 248 Cal.App.2d 625, 626-627 [56 Cal.Rptr. 811].)

The same lack of ambiguity or uncertainty in the instant case makes it unnecessary to apply the constructional maxim *expressio unius est exclusio alterius.* (*Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].)

In conclusion, we hold that payment received by appellants for overtime, uniform allowance and educational incentive pay was excludable from the calculation of appellants' retirement benefits as disability retirees under CERL and that the Board therefore did not act without statutory authority or abuse its discretion in so calculating their benefits.[6]

---

[6]Nothing in this opinion should be taken as barring either the inclusion of uniform allowance, educational incentive pay and overtime in the calculation of benefits should the Board decide to do so, or the right of a retired member to continue to receive benefits according to such calculation once established. Our conclusion is only that CERL does not require inclusion of those items of remuneration for retirees.

The judgment denying the petition for peremptory writ of mandate is affirmed.

Rouse, Acting P. J., and Miller, J., concurred.

A petition for a rehearing was denied August 18, 1983, and appellants' petition for a hearing by the Supreme Court was denied September 14, 1983.