[No. B081566. Second Dist., Div. Three. Jan. 22, 1996.]

HOWARD JARVIS TAXPAYERS' ASSOCIATION et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY et al., Defendants and Respondents.

1364

COUNSEL

Jonathan M. Coupal and Trevor A. Grimm for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, Roger M. Whitby, Assistant County Counsel, Patrick A. Wu, Principal Deputy County Counsel, Ada Treiger, Deputy County Counsel, David L. Muir, Hufstedler & Kaus, Morrison & Foerster, Joseph L. Wyatt, Jr., and Michael V. Toumanoff for Defendants and Respondents.

OPINION

**ALDRICH, J.—**

### INTRODUCTION

In this appeal we are asked to overturn a judgment based upon an order of the trial court sustaining a demurrer to plaintiffs' first amended complaint without leave to amend. The action below was brought by taxpayer groups Howard Jarvis Taxpayers' Association and Los Angeles Taxpayers Association (plaintiffs) seeking to invalidate certain actions of the County of Los Angeles (County), the Los Angeles County Retirement Board (the Board) and the Los Angeles County Employees' Retirement Association (LACERA). The first amended complaint alleged that defendants unlawfully included certain flexible benefits in the computation of "compensation earnable" for purposes of calculating the retirement benefits to County employees.

The taxpayer groups initially sued only the County claiming the County's action which increased the retirement benefits was a violation of statute

which required, among other things, an actuarial study and public hearings prior to the implementation of such benefits. The County filed a motion for judgment on the pleadings claiming it was not responsible for the computation and that the Board and LACERA had the statutory authority and duty to determine "compensation earnable" for purpose of computing retirement benefits. The trial court granted the County's motion but gave the plaintiffs leave to amend, suggesting that on amendment plaintiffs include as defendants the Board and LACERA.

Plaintiffs filed a first amended complaint naming, inter alia, the County, the Board and LACERA. All defendants demurred. The County again urged the same arguments it had made in its motion for judgment on the pleadings. Both the Board and LACERA argued they were separate legal entities and not constrained by the statutes governing County actions which required an actuarial study and public hearings. All demurrers were sustained without leave to amend. Plaintiffs filed this timely appeal.

Because we find that the County took no action regarding the inclusion of flex benefits in the computation of "compensation earnable" in calculating retirement benefits and that these actions were taken by the Board and LACERA which are independent public agencies created by statute, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Between 1985 and 1989, the County adopted four different flexible benefit plans for its employees: flexible benefit plan, megaflex, choices and options. The benefit plans provided for additional remuneration that could either be received in cash or be used to pay for certain benefits such as health, dental, life, or disability insurance. The benefits plans were designed to meet the requirements of section 125 of the Internal Revenue Code, which allows the benefits to be treated on a pretax basis, even though employees had the option of receiving cash in lieu of benefits.

On June 15, 1990, the Legislature added Government Code section 31460.1,[1] now repealed, to the County Employees Retirement Law of 1937, section 31450 et seq. (CERL). That section provided: " 'Compensation' shall not include employer payments, including cash payments, made to, or on behalf of, their employees who have elected to participate in a flexible benefits program, where those payments reflect amounts that exceeds [sic] . . . their employees' salaries. [¶] This section shall not be operative in any county until the time the board of supervisors shall, by resolution adopted by a majority vote, makes [sic] this section applicable in the county."

---

[1] Unless otherwise indicated, all statutory references herein are to the Government Code.

Beginning January 1, 1991, the staff of LACERA included the County's benefit plan contributions in "compensation earnable" within the meaning of CERL, which had the effect of increasing future retirement benefit payments for eligible participating County employees. On September 11, 1992, the board of LACERA formally and unanimously adopted a resolution "to ratify the policy, implemented through LACERA staff . . . ."[2]

In April 1992, plaintiffs filed a complaint for declaratory relief against the Board of Supervisors of Los Angeles County, alleging that the "unlawful 'spiking' of public employee pensions by defendant Board of Supervisors" would result in a cost to taxpayers of more than $265 million.[3] The complaint alleged that Assembly Bill No. 3146, which added section 31460.1, was misinterpreted by the County to implicitly require the inclusion of flexible benefit payments until the board of supervisors acts to exclude them pursuant to that provision. Plaintiffs also alleged the board of supervisors failed to comply with section 7507 with respect to that interpretation.

The board of supervisors answered, denying the substantive allegations of the complaint and specifically denying that the County had "unlawfully 'spiked' any pensions, that it had erroneously interpreted state law, that it adopted any interpretation of law improperly or that it violated any provision of law."

The parties submitted trial briefs. The board of supervisors also filed a motion for judgment on the pleadings, contending the board of supervisors never adopted an interpretation of section 31460.1 and that section 7507 was not applicable. The board of supervisors pointed out it was the duty of LACERA to act on retirement-eligible compensation and that the Board had acted to include flexible benefit plan payments as retirement eligible compensation. The board of supervisors requested judicial notice that section 31460.1 had been repealed on May 11, 1992.

Plaintiffs opposed the motion for judgment on the pleadings, arguing that the complaint could properly be read to allege that it was the administrative interpretation of "county staff" that led to the $265 million in additional unfunded liability. Plaintiffs contended that the repeal of section 31460.1 by

---

[2]As of this time the county board of supervisors had taken no action to include or exclude benefit plan contributions nor any resolution pursuant to section 31450. The result of this was that benefit plan contributions were included in calculating retirement benefits retroactively to January 1, 1991.

[3]Defendants strongly dispute the allegation as to the amount of the financial impact on the retirement system fund.

Senate Bill No. 193 was "the direct result" of the County's misinterpretation.[4] Plaintiffs requested judicial notice of various public records and documents.

---

[4]Senate Bill No. 193 provided in part:

"Sec. 3. The Legislature hereby finds and declares that:

"(1) The County Employees Retirement Law has, since its original enactment in 1937 by Chapter 677 of the Statutes of 1937, conferred upon the county retirement boards the duty and power to determine which of the items of compensation paid to county employees who are members of the county retirement associations or systems would constitute 'compensation earnable,' which, in turn, generally determines the amounts of the retirement allowances of retiring members (see Guelfi v. Marin County Employees' Retirement Assn. [(1983)] 145 Cal.App.3d 297 [193 Cal.Rptr. 343] at pages 303, 305, and 307 fn.).

"(2) It was in this setting that Chapter 142 of the Statutes of 1990 (Assembly Bill 3146 of the 1989-90 Regular Session) was enacted. That chapter added to the County Employees Retirement Law of 1937, Section 31460.1 of the Government Code. That section would apply to a county only if and when the board of supervisors elects to make the section applicable to the county. Section 31460.1 excludes from the term 'compensation' employer payments made to, or on behalf of, their employees who have elected to participate in a flexible benefits program, where those payments reflect amounts which exceed their employees' salaries.

"(3) Section 31460.1 has been erroneously construed as implicitly requiring counties maintaining retirement systems under the 1937 act to include in 'compensation' those flexible benefits payments until the board of supervisors elect pursuant to that section to exclude those flexible benefits payments from 'compensation.'

"(4) That interpretation was not intended by the Legislature when it enacted that section. Had that been the intent of the Legislature when it enacted Assembly Bill 3146, it would have been a substantial departure from the long-standing practice of the Legislature of not intruding into the county decisionmaking process regarding compensation determinations with respect to those county retirement systems (see Sections 31460 and following, Government Code).

"(5) Moreover, had that been the intent of the Legislature when it enacted that section, any resulting increased costs to affected counties would have constituted state-reimbursable, state-mandated local program costs and Assembly Bill 3146 would have included in its text the determination of the Legislature of how the state should respond to the resulting state-mandated local program costs. Assembly Bill 3146, however, did not, in its text, contain any such legislative determination.

"(6) It was the intent of Assembly Bill 3146 merely to accord to each county board of supervisors, at its option, the power either to preclude its county retirement board from including those flexible benefits payments in 'compensation,' if the county retirement board had not previously taken such action, or to supersede any previous decision of their county retirement board to include those flexible benefits payments in 'compensation.'

"(7) In order that the source of misconstruction of legislative intent regarding the enactment of Section 31460.1 of the Government Code may be eliminated at the earliest possible time, and that any county actions taken on the basis of that misconstruction may be reversed or terminated at the earliest possible time, the Legislature finds that it is necessary to repeal Section 31460.1 of the Government Code.

"(8) Any reversal of termination, on or after the effective date of this act, of county actions taken on the basis of misconstruction of the intent and meaning of Section 31460.1 of the Government Code would merely restrict county employees to those gains reasonably to be expected from their county retirement contracts and withhold unforeseen and windfall advantages which bear no relation to the fundamental theory and objective of the county retirement systems maintained pursuant to the County Employees Retirement Law of 1937

The trial court granted the board of supervisor's motion for judgment on the pleadings and granted plaintiffs leave to amend their complaint with the suggestion that they name the proper party. Among the trial court's reasons for granting the motion on the pleadings were the findings that the board of supervisors took no affirmative action to include flexible benefit plan payments as part of retirement-eligible compensation, and that flexible benefit plan payments were included as retirement-eligible compensation by the Board of LACERA, by resolution adopted at its meeting of September 11, 1992. Judgment was entered accordingly.

On July 14, 1993, plaintiffs filed a first amended complaint for declaratory relief, taxpayers' injunctive relief pursuant to Code of Civil Procedure section 526a and writ of mandate, naming LACERA, the Board, the County and Alan T. Sasaki, the auditor/controller, as defendants in addition to the board of supervisors. The amended complaint alleged that ". . . beginning January 1, 1991, without any official action of the County, by way of County ordinance, or by the Board [meaning LACERA and the Board], by way of resolution, and because of the illegal inaction of the County and the Board [LACERA], and as the result of certain discussions between the County's Chief Administrative Officer ('CAO') and the Board's [LACERA's] staff, the Board's staff began including the monetary value of the County's contribution to its employees' flexible benefit plans as compensation for purposes of computing County employee pension benefits in violation of . . . the County employees Retirement Law of 1937 . . . , which specifically *prohibits* the inclusion of any such flexible benefits in such pension-computation." Also, even if such inclusion were permitted, the complaint alleged, the inclusion was accomplished unlawfully without official County action or ordinance, without a noticed public hearing, without statutory authority, by agents without authority and who had a conflict of interest, without LACERA's action until September 1992, and the pension benefit payments based on such inclusion constitute an illegal gift of public funds. The complaint alleged violation of section 7507 and Los Angeles County Code section 5.27.100, which requires the chief administrative officer (CAO) to construe any ambiguous provision of the flexible benefit plan, and to obtain approval of the board of supervisors before implementing any such action. Plaintiffs also alleged violation of County bylaws and regulations.

Defendants board of supervisors, the County, and Alan T. Sasaki demurred to the amended complaint. LACERA and the Board also demurred.

and would, therefore, not constitute an unconstitutional impairment of the county retirement contract (see Allen v. Board of Administration [(1983)] 34 Cal.3d 114 [192 Cal.Rptr. 762, 665 P.2d 534], at pages 119-120, 122, and 124)."

After defendants filed their demurrers on September 7, 1993, Assembly Bill No. 1659 was passed by the Legislature. The bill added section 31461.1 to the Government Code, applicable only to a county of the first class as defined by section 28022 (subd. (a)). The County is the only county of the "first class." (§ 28022.) The new section again authorized the board of supervisors to preclude the inclusion of flexible benefit plan contributions, as former section 13160.1 did, but limited its authority "with respect to any employee who becomes a member after the effective date of the [board's] resolution." (§ 31461, subds. (b) & (c).) It provided that nothing in the section should be construed to affect any determination made by the board of retirement, pursuant to section 31461, defining "compensation earnable," prior to the effective date of the section.[5] (Subd. (e).)

Plaintiffs conceded that, as of January 1, 1994, when section 31461.1 would be effective, the CERL would permit the County to include flexible benefits as retirement eligible compensation. Plaintiffs continued to argue that it was the County administrative staff which directed the change in treatment of flexible benefits, not the Board, and the County failed to comply with section 7507.

The trial court sustained the demurrers of defendants, without leave to amend and ordered the complaint dismissed. Plaintiffs appeal.

## CONTENTIONS

Plaintiffs contend that the County altered the County employees' retirement benefit plan without complying with the requirements of section 7507

[5]At oral argument counsel informed the court that the board of supervisors had acted pursuant to section 31461.1. By letter dated December 5, 1995, county counsel confirmed that on February 15, 1994, the board of supervisors adopted an order approving the CAO's recommendation to seek union agreement to implement the section for future employees at such time as successor fringe benefit agreements were negotiated in 1995. A three-year memorandum of understanding covering union employees did not expire until September 30, 1995. The February 1994 order by the board of supervisors also approved implementation of section 31461.1 for nonrepresented employees concurrent with the implementation for represented employees.

County counsel confirmed that agreement has now been reached with the unions. By letter dated December 19, 1995, the board of supervisors adopted a resolution pursuant to subdivision (c) of section 31461.1 with respect to all employees hired on or after January 1, 1996, which excludes cafeteria or flexible benefit plus contributions from their pensionable compensation.

In addition, the board of supervisors has taken action in regard to current employees. On January 3, 1995, the board of supervisors adopted a resolution implementing section 31461.1, subdivision (d) with respect to nonrepresented employees who make an irrevocable election to become subject to the section. Subdivision (d) was added to section 31461.1 by Senate Bill No. 2003 and became effective January 1, 1995.

and violated Los Angeles County Code section 5.27.100. Plaintiffs also contend they stated a cause of action for injunctive relief.

The County and LACERA contend the Board acted properly and within its authority in including flexible benefit payments in calculating retirement benefits; and the County took no action on the issue requiring compliance with section 7507 or the Los Angeles County Code section 5.27.100.

The appeal does not challenge the order of dismissal of the action against LACERA and the Board.

## DISCUSSION

### 1. *Standard of Review*

We examine the first amended complaint to determine whether plaintiffs have successfully alleged a cause of action against the County defendants.

■ "On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 . . . ; *Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 . . . .) The court does not, however, assume the truth of contentions, deductions or conclusions of law. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 . . . .) The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 21 . . . .) However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 . . . .) And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.)" (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

The court also considers matters which may be judicially noticed. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### 2. *CERL*

CERL (§ 31450 et seq.) provided for the adoption of a pension program for county employees by the electorate or by the board of supervisors.

(§ 31500.) The purpose of the legislation was to provide for retirement compensation and death benefits as additional elements of compensation for future services. (§ 31451.) The County established LACERA in 1947. By statute, the management of a county employee retirement system is vested with the Board. (§ 31520.) ■ A county board of retirement does not act as an agent for the county, but as an independent entity established pursuant to CERL. (*Traub* v. *Board of Retirement* (1983) 34 Cal.3d 793, 798 [195 Cal.Rptr. 681, 670 P.2d 335].)

The board of retirement is vested with powers under CERL to manage the county's retirement system, including the responsibility of determining the amount of retirement allowance to which members are entitled. (§§ 31520, 31461.) An employee's retirement benefit is based upon his or her final compensation. "*Final compensation*" is defined as "the average annual *compensation earnable* by a member during any three years elected by a member at or before the time he files an application for retirement, or, if he fails to elect, during the three years immediately preceding his retirement. . . ." (§ 31462.) By resolution, the county board of supervisors may adopt an alternative provision, which bases "final compensation" on a member's compensation earnable for any one year. (§ 31462.1.)

"*Compensation earnable*" is defined as "the average compensation as determined by the *board,* for the period under consideration upon the basis of the average number of days ordinarily worked by persons in the same grade or class of positions during the period, and at the same rate of pay. . . ." (§ 31461, italics added.) "Board" refers to the board of retirement. (§§ 28020, 28022, 31459, subd. (c).) Thus, the board of retirement is vested with the authority to determine which elements of compensation constitute "compensation earnable" for purposes of inclusion or exclusion from calculation of "final compensation." (*Guelfi* v. *Marin County Employees' Retirement Assn.* (1983) 145 Cal.App.3d 297, 300 [193 Cal.Rptr. 343].)

The county board of supervisors sets the compensation for county officers and provides for "the number, compensation, tenure, appointment and conditions of employment of county employees." (§ 25300; see also Cal. Const., art. XI, § 1, subd. (b).) For retirement plan purposes, only items of "compensation" as defined in section 31460 are to be considered in the retirement board's determination of "compensation earnable" (§ 31461) and computation of "final compensation" (§ 31462 or § 31462.1). (*Guelfi* v. *Marin County Employees' Retirement Assn., supra,* 145 Cal.App.3d at pp. 297, 303.) CERL defines "compensation" as "the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages

for participation in a deferred compensation plan . . . but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member." (§ 31460.) *Guelfi* v. *Marin County Employees' Retirement Assn.*, *supra*, held that the retirement board acted with statutory authority and did not abuse its discretion in excluding payment received by deputy sheriffs for overtime, uniform allowances and educational incentive pay in calculating their retirement benefits. The court noted, however, that its opinion should not be taken as barring the inclusion of these items should the board decide to do so. "Our conclusion is only that CERL does not require inclusion of those items of remuneration for retirees." (154 Cal.App.3d at p. 307, fn. 6.)

Thus, the Board has the statutory authority to determine which items of remuneration are included in the calculation of retirement benefits, consistent with section 31460.

### 3. *The Amended Complaint Against the County*

#### a. *Alleged Violation of Section 7507*

██ The records properly noticed reveal that the staff of LACERA, not the County Board of Supervisors, began including the flexible benefit payments in the determination of retirement benefits based on final compensation on January 1, 1991. The Board was informed of this action on January 2, 1991, and formally ratified the practice on September 11, 1992. The trial court made findings to this effect in the judgment in favor of the board of supervisors on the original complaint. There is no dispute that such flexible benefit payments constitute "remuneration" which may permissibly be taken into account in determining "compensation earnable" for retirement plan purposes.

Plaintiffs, however, argue that it was the County administrative staff which directed the change in treatment of flexible benefits, not the Board. The "facts" alleged in the second amended complaint are as follows: "Plaintiffs are informed and believe and therefore allege that certain staff members of the County of Los Angeles, including its CAO [chief administrative officer] and certain staff members of the Board [referring to LACERA and the Board] made a decision to include flexible benefits as retirement-eligible compensation for purposes of determining the pension benefits payable to County employees including themselves, beginning on January 1, 1991, *without* any authority from the County by way of ordinance or from the Board [of Retirement] by way of resolution, and that the Board [of Retirement] took no official action with respect to such action until September,

1992, when it made an attempt to retroactively ratify the making of the prior illegal payments." On appeal, plaintiffs do not dispute that as a general proposition, LACERA is empowered to ratify the actions of its staff. They identify the issue as who actually made the decision in the first place.

Also, the amended complaint quoted from a commission report to the board of supervisors, entitled "Report of the Los Angeles County Economy and Efficiency Commission on Los Angeles County Policies and Practices Governing Retirement Eligible Salary and Benefits": " 'The failure of the County staff to include LACERA as an administrative body in the decision making process, a failure to inform the public, through the Board of Supervisors, of the fiscal impacts of proposed actions, and a potential conflict of interest on the part of the individuals making the decisions on this matter are often cited as issues of prime concern.' "

Plaintiffs had submitted the document to which the complaint referred in opposition to defendants' motion for judgment on the pleadings on the original complaint. It had been produced by defendants during discovery. Upon defendants' objection, the trial court denied plaintiffs' request for judicial notice. The document was not an official document of the County but simply a report by a citizen advisory committee.

Plaintiffs contend they have stated "a valid cause of action based on Government Code section 7507 because any increase in public retirement plan benefits, whether expressly or implicitly authorized by respondent Board of Supervisors, must be preceded by a public hearing and actuarial report."

Although plaintiffs acknowledge that LACERA, an independent entity, is authorized by statute to determine what constitutes "final compensation," they contend the County, not LACERA, did *in fact* cause the change in the County employees' retirement benefits in this case.

However, the record demonstrates the change in the retirement system of which plaintiffs complain was not an "increase in public retirement plan benefits" which the board of supervisors may authorize, and which would subject it to the requirements of section 7507, but rather a change in LACERA's method of calculating "compensation earnable" for purposes of determining a member's final compensation. The fact that this resulted in what plaintiffs' characterize as a massive increase in the County's obligation for the payment of future benefits did not implicate the authority of the board of supervisors nor trigger the duty to request an actuarial study and to report the results at a public meeting under the existing statutory scheme.

Any deficiencies in the system are more appropriately addressed and perhaps remedied in the political and legislative arenas, not in this court.

The separate roles of the legislative body of a county and the board of retirement which administers the county employees retirement plan are apparent in the provisions of CERL and have been reaffirmed by the recent actions by the Legislature. The recent additions and amendments to CERL authorized the County's legislative body, the board of supervisors, to take action to exclude flexible benefit payments at its option. Implicit in these provisions is recognition that such benefits could properly be included in the calculation of retirement-eligible compensation by the Board.[6]

In light of the law which vests sole authority for administering the retirement system in the Board, with specific authority to determine which elements of compensation should be included in the calculation of "compensation earnable" and "final compensation," bald allegations that the County or the County's administrative staff "in fact, made the decision" do not state a cause of action against the County. Judicially noticed documents and the pleadings demonstrate that LACERA staff members adopted the practice of inclusion, and the Board ratified the decision retroactively. There are no allegations of wrongdoing by the County other than the failure to comply with procedural requirements which were not applicable to the County in this particular instance.

There appears to be some confusion in plaintiffs' pleadings and argument that LACERA staff members are County employees, thereby making them agents of the County. Nevertheless, in administering the retirement plan, the staff members act as agents of LACERA and the Board, not the County. There is nothing in the record to indicate otherwise.

The allegations that the County ratified the decision of the County staff through inaction also fail to state a cause of action. Absent authority to make the decision of which plaintiffs complain, the County's inaction does not constitute ratification, and accordingly does not violate any requirement to comply with section 7507.

Furthermore, we must point out that judgment in favor of the board of supervisors, along with findings, was entered in this action on the original complaint. The allegations of the amended complaint did not contain new allegations sufficient to state a cause of action against the County or the board of supervisors.

---

[6]Indeed, the board of supervisors has taken action to exclude flexible benefit payments. See footnote 5, *ante.*

### b. *Alleged Violation of Los Angeles County Code Section 5.27.100.*

Chapter 5.27 of the Los Angeles County Code established and governs the flexible benefit plan adopted by the County for its employees. It specifically states that the County "intends to administer the Plan under the direction of the Board [of Supervisors] in compliance with Section 125 of the [Internal Revenue Code of 1986] and the regulations promulgated pursuant thereto." (§ 5.27.070, subd. A.) The code reserves the right to amend or terminate the plan at any time or cease to make nonelective contributions. (§ 5.27.080)

The CAO is directed to determine the cost to be charged to a participant to receive a nontaxable benefit (§ 5.27.050, subd. C).

Section 5.27.100 is entitled "Construction of the Plan," and provides, as follows: "Subject to the approval of the Board, the CAO may construe any ambiguous provisions of the Plan, correct any defect, supply any omission, or reconcile any inconsistency, in such manner and to such extent as the CAO in his discretion may determine; and any such action of the CAO shall be binding and conclusive upon all Participants, except that the CAO shall obtain Board approval before implementing any such action. Wherever appropriate in the Plan, the masculine gender shall include the feminine, and the feminine gender the masculine, unless the context clearly indicates otherwise. (Ord. 90-0164 § 1 (part), 1990: Ord. 84-0220 § 1(b) (Ch. 5.27 § 10), 1984.)"

Plaintiffs allege violation of this provision, contending that the CAO was required to present the issue of the inclusion of the flexible benefit plan payments as compensation for retirement plan benefits, "because how flexible benefits are classified for retirement purposes is an inseparable part of the flexible benefit plan itself."

According to plaintiffs, this created "an ambiguity" which should have been presented to the board of supervisors. Their amended complaint alleged the administrative staff and CAO of the County made the decision to include flexible benefits as retirement eligible.

Contrary to plaintiffs' contention, section 5.27.100 does not grant the CAO any authority to set policy regarding the inclusion of flexible benefit payments as "compensation earnable" for purposes of calculating retirement benefits. Any impact upon retirement benefits is merely incidental to the County's action to include flexible benefit plans as remuneration for County employees and is outside the scope of the CAO's duty to administer such plans pursuant to section 5.27.100.

The amended complaint fails to state a cause of action for violation of section 5.27.100 of the County Code.

### c. *Taxpayer Injunctive Relief*

In light of the failure to allege violations of law, there is no basis for an action to prevent or restrain "illegal expenditure" of County funds pursuant to Code of Civil Procedure section 526a. (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1109 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) The demurrers to this cause of action were properly sustained.

### DISPOSITION

Judgment affirmed. Defendants are awarded costs on appeal.

Klein, P. J., and Croskey, J., concurred.