[No. F045780. Fifth Dist. Feb. 9, 2005.]

BOARD OF RETIREMENT OF THE KERN COUNTY EMPLOYEES'
RETIREMENT ASSOCIATION et al., Plaintiffs and Appellants, v.
MARK A. BELLINO, Defendant and Respondent.

COUNSEL

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, David J. Cooper and James M. Duncan for Plaintiffs and Appellants.

Chain, Younger, Cohn & Stiles and David V. Stiles for Defendant and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—This is an appeal from a declaratory judgment permitting defendant and respondent Mark A. Bellino "to assume his duly elected seat" as a member of the Board of Retirement of the Kern County Employees' Retirement Association. (The board and the association were plaintiffs below and are the appellants in this court.) The dispute between the parties concerns the applicability of Government Code section 53227, which prohibits employees of certain local agencies from sitting on the governing bodies of the agency. (All further section references are to the Government Code, except as otherwise stated.)

We conclude that, for purposes of section 53227, respondent is an employee of appellants. Further, appellants are a governing board and local agency to which section 53227 is applicable. Accordingly, we reverse the judgment.

### Facts and Procedural History

Respondent is a nonmanagement employee of appellants. As such, he is a county civil service employee and a member of the retirement association, as are all other county employees, whether they work for the association or for county departments. (§ 31522.1.) The board of retirement is the governing board of the association. The board is composed of nine members, of whom two are required by statute to be "members of the association, other than safety members, elected by those members." (§ 31520.1.) In 2003, respondent was elected to fill one of the two "member" positions on the board.

Appellants notified respondent that he would not be permitted to assume his elected position unless a court ruled that section 53227 was inapplicable to the situation. (We set out the text of section 53227 in the Discussion section, below.)

A few weeks later, appellants filed a complaint for declaratory and injunctive relief. The matter was tried to the court sitting without a jury.

The evidence established that respondent's job involves calculating retirement benefits and that there are two levels of supervision between himself and the executive director of the association. The executive director serves at the pleasure of the board, his or her salary is set by the board, and the performance of that person is formally evaluated by the board. The executive director is responsible, among other duties, to formally evaluate the association's employees.

The court ruled that, in accordance with the analysis contained in a formal opinion of the Attorney General (see 80 Ops.Cal.Atty.Gen. 11 (1997)),

respondent was permitted to serve on the board without resigning his employment or being terminated from that employment. Appellants filed a timely notice of appeal.

## Discussion

### A. *The Statutory Text*

At first blush, this case seems to involve a very straightforward application of a clear statute to uncomplicated facts. After all, in commonsense terms, respondent is an employee of appellants, who are a local public entity and its governing board. The relevant code provisions—the substantive prohibition and attendant definitions—are as follows:

"An employee of a local agency may not be sworn into office as an elected or appointed member of the legislative body of that local agency unless he or she resigns as an employee. If the employee does not resign, the employment shall automatically terminate upon his or her being sworn into office." (§ 53227, subd. (a).)

As used in section 53227, " 'Local agency' means a city, city and county, county, district, municipal or public corporation, political subdivision, or other public agency of the state." (§ 53227.2, subd. (a).) " 'Legislative body' means the board of supervisors of a county or a city and county, the city council of a city, or the governing body of a district, municipal or public corporation, political subdivision, or other public agency of the state." (§ 53227.2, subd. (b).)

The substantive prohibition was adapted from a similar prohibition enacted as part of the Education Code in 1991. (See Stats. 1991, ch. 1065, § 2, p. 4944.) In its present codification, Education Code section 35107, subdivision (b)(1), states: "An employee of a school district may not be sworn into office as an elected or appointed member of that school district's governing board unless and until he or she resigns as an employee. If the employee does not resign, the employment will automatically terminate upon being sworn into office."

As stated in a legislative analysis of the bill proposing section 53227, the bill simply "expands a prudent prohibition on dual service from school and community college districts *to all local agencies*." (Sen. Local Gov. Com., Analysis of Assem. Bill No. 236 (1995–1996 Reg. Sess.) July 3, 1995, p. 2, italics added.)

## B. *The Source of the Problem*

Straightforward application of section 53227 in the present case is hampered by certain historical peculiarities both in the development of section 53227 and in the creation of local retirement associations. The interaction of those historical peculiarities resulted in the trial court's determination that section 53227 did not prevent respondent from serving on the staff of appellant association while serving as a member of appellant board.

When Assembly Bill No. 236, proposing sections 53227 and 53227.2, was under consideration, a late amendment to the bill deleted the word "county" from the definition of "local agency." (See Assem. Bill No. 236 (1995–1996 Reg. Sess.) as amended July 3, 1995, § 1.) Later in that legislative session, another bill was passed to establish an exception to the definition of "local agency" codified as section 53227.2, subdivision (a): " 'Local agency' does not include a county." (Assem. Bill No. 1566 (1995–1996 Reg. Sess.) as amended Sept. 8, 1995, § 4.5, italics omitted.)

In 2001, legislation was introduced to add counties and their boards of supervisors back into the prohibition of section 53227. According to a legislative committee analysis, the "Legislature granted an exemption to all counties because a particular Contra Costa County supervisor also worked for the County as an emergency room doctor. That person is no longer a county supervisor, but paid county employees continue to be exempt from the dual service ban." (Sen. Local Gov. Com., Analysis of Sen. Bill No. 544 (2001–2002 Reg. Sess.) May 2, 2001, p. 2.) The relevant changes were adopted and section 53227.2 assumed its current form, as quoted above. (See Stats. 2001, ch. 43, § 1.)

Meanwhile, in 1997 the Attorney General issued an opinion in response to a county counsel's question: "May a person holding a non-management, clerical position in the office of a board of retirement . . . serve as a member of the board of retirement?" (See 80 Ops.Cal.Atty.Gen., *supra*, at p. 11.) In responding to this question, the Attorney General introduced into the mix a peculiarity of the County Employees Retirement Law of 1937, codified beginning at section 31450. (See 80 Ops.Cal.Atty.Gen., *supra*, at p. 14.)

In the 1970's the retirement law had been amended to permit boards of retirement to "appoint such administrative, technical, and clerical staff personnel as are required to accomplish the necessary work of the boards." (§ 31522.1.) These "personnel shall be county employees and shall be subject to the county civil service . . . rules and shall be included in the salary ordinance or resolution adopted by the board of supervisors for the compensation of county officers and employees." (*Ibid.*)

The Attorney General reasoned that the existence of a specific exception in section 53227.2, subdivision (a), for county employees meant that section 53227 could not apply to personnel of the retirement association, since those personnel were designated as "county employees" by section 31522.1. (80 Ops.Cal.Atty.Gen., *supra*, at pp. 13–14.) The Attorney General's opinion noted that it was not necessary to discuss the related question of whether the retirement association was a "local agency" for purposes of section 53227, since the personnel of the association were exempted as "county employees." (80 Ops.Cal.Atty.Gen., *supra*, at p. 14.) "We have examined the [relevant] legislative histories, . . . and they fully support the intended *exclusion of county employees* from the prohibition of section 53227." (*Id.* at p. 13, italics added.)

There is no longer an exception in section 53227.2 for counties; the definition of "local agency" now expressly includes counties. (§ 53227.2, subd. (a).) This definitional change clarifies the existence of the section 53227 prohibition for county employees who wish to serve on the board of supervisors of the employing county. The definitional change also undermines the rationale for the Attorney General opinion, since the opinion was based on the existence of an exemption from the statute for "county employees." The definitional change does not, however, answer the two questions left unanswered in the Attorney General's opinion: first, are the staff of a retirement association *also* employees of the association for purposes of section 53227; second, is a retirement association a "local agency" for purposes of section 53227?

C. *Retirement Association Staff Members Are Association Employees*

Respondent contends that the designation in section 31522.1 of retirement association staff as "county employees" should be directly applicable to the use of the word "employee" in section 53227. Further, respondent contends that, by virtue of section 31522.1, appellants' staff must be *solely* employees of the county.

■ Ordinarily, rules of statutory interpretation require that different sections of a code must be read together, that the literal language of the statutes is the primary guide to legislative intent, and that code provisions relating to the same subject must be harmonized to the extent possible. (See *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046].)

"We will not, however, apply the literal language of a statute 'when to do so would evidently carry the operation of the enactment far beyond the legislative intent and thereby make its provisions apply to transactions never

contemplated by the legislative body.' [Citation.]" (*People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791, 798 [94 Cal.Rptr.2d 609, 996 P.2d 711].) "[W]e believe this case presents the rare situation where the literal application of a statute contravenes the legislative intent behind its enactment." (*Ibid.*) Accordingly, as we explain below, we cannot conclude the designation of retirement association staff as "county employees" in section 31522.1 exempts such persons from the prohibition of section 53227.

The County Employees Retirement Law of 1937 defines "employee" (§ 31469) and includes retirement association staff within the definition of "county employees" (§ 31522.1). Sections 53227 and 53227.2 are not part of the County Employees Retirement Law of 1937 and neither section defines the term "employee."

■ It is not necessary or appropriate to attempt to harmonize two statutes by simply importing a definition from one statute into another if that will "thereby negate the clear mandate of the host statute." (*Henning v. Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 760 [268 Cal.Rptr. 476].) The intent of section 53227, as reflected both in its language and its legislative history, is to avoid the conflicts presented when a governing board with an employee-member must exercise the powers of an employer, both with respect to that employee-member and with respect to that employee-member's own workplace supervisors.

■ On the other hand, if we were to construe section 31522.1 as establishing the county as the sole employer of retirement association staff, it would create an exception to the broad prohibition of section 53227, an exception that finds no support in logic or in the legislative history of section 53227. We will not, in an effort to harmonize two sections of a code, adopt a construction that would frustrate the obvious purposes of the legislation as a whole or otherwise lead to absurd results. (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340 [33 Cal.Rptr.2d 109, 878 P.2d 1321].)

■ As stated, if the definition from section 31522.1 is not imported into section 53227, the word "employee" is not otherwise defined by statute for purposes of section 53227. "In this circumstance—a statute referring to employees without defining the term—courts have generally applied the common law test of employment." (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 [9 Cal.Rptr.3d 857, 84 P.3d 966].) In *Metropolitan Water Dist.*, the court held that workers who were paid and formally employed by a private labor contractor would be employees of the water district for purposes of its retirement plan if the workers met the

common law definition of "employee." (*Ibid.*) Those requirements, clearly present here, have been summarized as follows: The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, gives rise to the employment relationship. (*McFarland v. Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 704 [343 P.2d 923].)

■ It long has been common in the supplied-labor context for an employee to be deemed to have two employers. (See, e.g., *National Auto. Ins. Co. v. Ind. Acc. Com.* (1943) 23 Cal.2d 215 [143 P.2d 481]; cf. *Howard Jarvis Taxpayers' Assn. v. Board of Supervisors* (1996) 41 Cal.App.4th 1363, 1376 [49 Cal.Rptr.2d 157].) Accordingly, there is no anomaly created if, for purposes of the section 53227 prohibition, appellants are an additional employer of respondent. Such a conclusion would in no way undermine the role of counties as employers of retirement association personnel under section 31522.1.

To hold in this case that respondent was not an employee of appellants, based solely on section 31522.1, would frustrate the obvious purposes of section 53227: Respondent was supervised on a day-to-day basis by a chain of command topped by the association's executive director. The executive director was not only required to sign off on respondent's annual performance review, but the executive director was also subject to a similar review performed by appellant board of retirement. While, historically, such a situation may have been successfully dealt with by the employee-member's abstention from decisions of the board (see 80 Ops.Cal.Atty.Gen., *supra*, at p. 14, fn. 4), the Legislature clearly has chosen in section 53227 to prevent such situations in a different manner, by prohibiting altogether the situation that would produce the conflict.

■ For all of the foregoing reasons, we conclude a staff member of a retirement association is an employee of the association for purposes of section 53227 when, as here, the common law indications of an employment relationship are present. (See also *Corcoran v. Contra Costa County Employees Retirement Bd.* (1997) 60 Cal.App.4th 89, 94–95 [70 Cal.Rptr.2d 385].)

D. *Appellant Retirement Association Is a Local Agency*

■ The County Employees Retirement Law of 1937 does not expressly designate retirement associations as any particular type of public entity. Courts have referred to retirement associations and boards of retirement as "administrative agencies" (*Preciado v. County of Ventura* (1982) 143 Cal.App.3d 783, 789 [192 Cal.Rptr. 253]), "administrative tribunals" (*Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32

Cal.App.4th 30, 45 [37 Cal.Rptr.2d 860]), "independent entities" (*Traub v. Board of Retirement* (1983) 34 Cal.3d 793, 798 [195 Cal.Rptr. 681, 670 P.2d 335]), and an entity "which exists by virtue of statute" (*County of Los Angeles v. Byram* (1951) 36 Cal.2d 694, 695 [227 P.2d 4]).

Despite the failure of the statute and case law to define the exact nature of retirement associations, all of the cases treat such associations as public, rather than private, entities. (See, e.g., *Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 824 [25 Cal.Rptr.2d 148, 863 P.2d 218] [board is "local agency" for purposes of Ralph M. Brown Act]; *Board of Retirement v. Santa Barbara County Grand Jury* (1997) 58 Cal.App.4th 1185, 1195 [68 Cal.Rptr.2d 607] [board is "local government agency" subject to powers of grand jury].)

Respondent contends, however, that "local agency" is peculiarly defined in section 53227.2 to encompass *not* agencies of local government but, instead, agencies of state government. Section 53227.2, subdivision (a), states: " 'Local agency' means a city, city and county, county, district, municipal or public corporation, political subdivision, or other public agency of the state." Respondent acknowledges the obvious, namely, that "district," "municipal or public corporation," and "political subdivision" all refer to local entities. But respondent says appellant board "is an agency of the county, not the state," so membership on the board cannot be governed by section 53227.

Although respondent's argument would seem to defy common sense (why would the Legislature define "local agency" to mean "state agency"?), the argument would at least be linguistically plausible if the statutory language were "district, municipal or public corporation, political subdivision, or *a* public agency of the state." That, however, is not what the statute says.

In terms of ordinary grammar, by referring to "*other* public agency of the state," the qualification "of the state" is distributed across all of the items in the list. For example, the full description of "municipal or public corporation" specified by the statute is "municipal or public corporation of the state." Phrased somewhat differently, use of the word "other" means that the previous items in the list are *examples* of "other public [agencies] of the state."

In legal terms, the use of "other" (instead of "a") invokes the interpretive rule known by its Latin name, *ejusdem generis*. Pursuant to that rule of construction, the meaning of a general term that follows a listing of more specific terms must be limited to things of the same type as the specific items. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 12 [241 Cal.Rptr. 67, 743 P.2d 1323]; see also Civ. Code, § 3534 ["Particular expressions qualify those which are general."].)

Viewed in these terms, "of the state" is not used in the possessive sense, as in "the state's agencies." Rather, it is used in a more geographical sense, as in "public agencies within this state." An analogous distinction might be that between "a horse of the king" and "a horse of the kingdom."

Respondent repeatedly states that the Attorney General concluded in the opinion discussed above (80 Ops.Cal.Atty.Gen., *supra*, at p. 11) that boards of retirement are not local agencies. That, however, is not so. As discussed above, the Attorney General opinion is based exclusively on the statutory exemption, as it then existed, for "county employees." The opinion states that its conclusion would be the same "regardless of whether the board may be considered a 'local agency' for purposes of the prohibition" of section 53227. (*Id.* at p. 14.)

■ We conclude a board of retirement is an "other public agency of the state" and, therefore, a "local agency" for purposes of section 53227.

## E. *No Constitutional Violation*

Respondent renews his contention, not decided by the trial court, that section 53227 deprives him of procedural due process and unreasonably restricts his right to hold public office. Respondent has not established either violation.

We first note an obvious conundrum that distinguishes the present case both from the Education Code prohibition on dual service (see Ed. Code, § 35107, subd. (b)(1)) and from most other applications of section 53227: respondent is eligible for a position on the board of retirement only because he has been elected as one of two member representatives; if he is no longer a member of the association, he immediately forfeits his board position. (§ 31524 ["Separation from the service of the county of a member of the board vacates his office."].) Thus, while a teacher could make an informed decision that serving on the school board was more important than continuing his teaching job, respondent is not in that position. Other county employees who are not retirement association staff can serve as retirement board members. But only if respondent changed jobs within the county civil service system would he be able to keep both positions. (Respondent's attorney represented to the trial court that such a transfer would be disadvantageous to respondent because he would be a probationary employee in his new position.)

The existence of this dilemma does not change the due process analysis, however. Respondent's property interest in his job and the state's interest in avoiding conflicts of interest on the boards of local agencies remain the same.

The due process analysis is controlled by *Coleman v. Dept. of Personnel Administration* (1991) 52 Cal.3d 1102 [278 Cal.Rptr. 346, 805 P.2d 300] (*Coleman*), a case that respondent does not cite, much less attempt to distinguish. The issue in *Coleman* was the nature of the pre- and post-termination process that was due a state employee who was deemed to have resigned his employment under a statute providing for "automatic resignation" after five continuous days of unexcused absence from the job. (*Id.* at p. 1108.) Two aspects of *Coleman* are particularly relevant.

First, *Coleman* addresses the question of remedy. Respondent contends section 53227 is "prima facie unconstitutional" because it does not provide for a pretermination hearing. *Coleman* says that even if respondent were entitled to a hearing, the statute is not void for failing to provide a hearing. (*Coleman, supra,* 52 Cal.3d at p. 1123.) Instead, if respondent were constitutionally entitled to a hearing before the automatic resignation provision could be operative, the remedy would simply be to order such a hearing. (*Ibid.*)

Second, *Coleman* emphasizes that the same process is not due every time a civil service employee separates from employment. When an employee is discharged for cause, the state has acted to deprive him or her of the property interest in employment. When an employee resigns, the state has done nothing and "has no duty to afford the employee any procedural protections either before or after the resignation takes effect." (*Coleman, supra,* 52 Cal.3d at p. 1115.)

*Coleman* says that a statute that establishes conditions whereby a government employee would be deemed automatically to have resigned would be constitutionally equivalent to any other resignation. (*Coleman, supra,* 52 Cal.3d at pp. 1117–1118.)

In *Coleman*, however, the court concluded that—the terms of the statute notwithstanding—the employer actually exercised discretion in invoking the five-day absence statute: the state had waited "over a month" before treating Coleman's absence as a resignation. (*Coleman, supra,* 52 Cal.3d at p. 1118.) Because the employer exercised discretion in invoking the statute (*ibid.*) and because there might be factual issues requiring resolution (*id.* at p. 1121), and because of "the direct impact that loss of employment has on an individual's livelihood and ability to meet the need of basic sustenance" (*id.* at p. 1118), the court required a minimal level of due process protection before "the resignation goes in to effect." (*Id.* at p. 1122.) The court held that due process required the employer to "give notice to the employee of the facts supporting resignation and an opportunity to respond." (*Id.* at p. 1119.) The employee is not entitled to a "postseverance evidentiary hearing at which the state must prove the facts supporting the determination of resignation." (*Ibid.*)

In the present case, the employer has no discretion, either under the statute or in practice, to permit an employee to continue employment after taking the oath of office for the governing board. Most notably, unlike unauthorized absence from employment, the situation has no possibility of resolving itself over time. In the *Coleman* situation, by contrast, the employer could make a reasonable decision to wait a few days to see if the employee showed up with a valid excuse for his or her absence.

Further, in the present case there is no possible factual issue to be resolved. A single event that occurs in the employee's presence—administration of the oath of office—serves to automatically terminate employment.

In these circumstances, respondent's vested property right to employment automatically terminates "upon satisfaction of certain statutory conditions." (*Coleman, supra,* 52 Cal.3d at p. 1115.) Such a statutory limitation upon the original right, and upon its termination without hearing, is constitutionally permissible. (*Ibid.*)

Even if we were to conclude that respondent was entitled to the level of due process protection made available in *Coleman*, we would still conclude respondent is not entitled to relief. *Coleman* states the employee is entitled to an "opportunity to present his or her version of the facts" only if the employee "challenges the accuracy of the state's factual basis." (*Coleman, supra,* 52 Cal.3d at pp. 1122–1123.) Here, only one fact is significant: respondent's election as a members' representative on the board of retirement. Respondent does not challenge that fact and, indeed, affirmatively asserts that fact as the basis for his position in this litigation.

 Relying exclusively on *Clements v. Fashing* (1982) 457 U.S. 957 [73 L.Ed.2d 508, 102 S.Ct. 2836], respondent also contends section 53227 constitutes an unreasonable restriction on his right to run for office. That reliance is misplaced. *Clements* states: "Far from recognizing candidacy as a 'fundamental right,' we have held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.' " (*Clements, supra,* at p. 963 (plur. opn. of Rehnquist, J.).) Accordingly, legislative restrictions on candidacy "need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." (*Ibid.*)

 The restriction imposed by section 53227 easily meets this test. Avoidance of conflicts of interest by local board members clearly is a legitimate state goal. Prohibiting service on such boards by employees of the

board, who will have continuing and pervasive conflicts, clearly bears a rational relationship to that goal. Further, the duration of the prohibition, lasting as long as the employment, is a reasonable recognition of the duration of the conflicts of interest the statute seeks to avoid.

## Disposition

The judgment is reversed. Costs on appeal are awarded to appellants.

Cornell, J., and Gomes, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 18, 2005.