Filed 7/26/24 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES B. MORELL,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>BOARD OF RETIREMENT FOR ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM,<br><br>     Defendant and Appellant. | B331080<br><br>(Los Angeles County<br>Super. Ct. No. 22STCP02345)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 10, 2024, be modified as follows:

1. On page 21, in the first full paragraph under section B, insert the word "valid" after "even though Resolution 90-1551 itself may have remained retrospectively" so that the last part of the sentence reads:

   even though Resolution 90-1551 itself may have remained retrospectively valid."

2. On page 28, in the second full paragraph, in the fifth line from the bottom, change "Morrell" to Morell.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

_____
ROTHSCHILD, P. J.        WEINGART, J.

Filed 7/10/24 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JAMES B. MORELL, | B331080 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 22STCP02345) |
| BOARD OF RETIREMENT OF THE ORANGE COUNTY EMPLOYEES' RETIREMENT SYSTEM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mary H. Strobel, Judge. Reversed and remanded with directions.

Reed Smith, Maytak Chin, Mariah K. Fairley, and Kathryn M. Bayes for Defendant and Appellant.

James B. Morell, in propria persona, for Plaintiff and Respondent.

_____

When respondent James Morell retired from his position as a research attorney for the Orange County Superior Court, he was entitled to a pension under the County Employees Retirement Law of 1937 (CERL). To determine the amount of his pension, the appellant board of retirement of the Orange County Employees' Retirement System (OCERS) needed to first calculate Morell's "compensation," a legal term codified in Government Code section 31460.[1] At issue in this appeal is whether the board correctly excluded certain amounts from the calculation of "compensation."

In the years relevant to this appeal, research attorneys working for the Orange County Superior Court could participate in an "Optional Benefit Program" (OBP). The OBP provided a $3,500 benefit that an attorney could allocate in a variety of ways, such as taxable cash (paid to the attorney in their first paycheck of the year) or a healthcare reimbursement account from which the attorney could be reimbursed on a pre-tax basis for certain medical expenses not covered by insurance. If no election were made, the entire $3,500 would be paid to the attorney as taxable cash. In each year relevant to this appeal, Morell allocated a portion of the $3,500 OBP benefit to a healthcare reimbursement account and the remainder to cash. When the board of retirement calculated Morell's "compensation" in 2014, it omitted the $3,500 OBP payments. In the decade since, the parties have been litigating whether the board was right to do so.

---

[1] Undesignated statutory references are to the Government Code.

In 2022, the board denied Morell's latest appeal, citing Orange County Resolution 90-1551, which the board contended required exclusion of the OBP payment from the calculation of "compensation." During a brief window in which the Legislature enacted the now-repealed section 31460.1—which expressly excluded payments made by an employer to an employee who elected to participate in a flexible benefits program—the Orange County board of supervisors passed Resolution 90-1551, adopting the statute's provisions. When the Legislature later repealed section 31460.1 in 1992, it also provided that "Nothing in this act is intended to, or shall be construed to, affect the validity of any action taken by a county pursuant to Section 31460.1 of the Government Code, prior to the effective date of this act." In granting Morell's latest petition for writ of mandate, the trial court ordered the board to set aside and reconsider its decision without relying on Resolution 90-1551, because the court found the resolution had been invalidated.

In this appeal, the board of retirement advances three separate arguments on why it believes the trial court erred: (1) including the OBP payments in the pension calculation would constitute "pension-spiking," which the Legislature sought to eliminate with the Public Employees' Pension Reform Act of 2013; (2) Resolution 90-1551 is still valid even though section 31460.1 has since been repealed; and (3) in 2002, as part of a settlement agreement between OCERS and a settlement class of which Morell was a member, the parties agreed that OBP payments would not be included in pension calculations.

Because we conclude that Resolution 90-1551 is still valid despite the repeal of section 31460.1, we need not consider the

3

board's other arguments. We reverse the trial court's judgment and remand with directions to deny Morell's petition.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.    *The Definition of Compensation*

"Counties maintain employee retirement plans under CERL. (§ 31450 et seq.) CERL requires retirement boards to determine whether the remuneration paid in cash qualifies as 'compensation' under section 31460 and 'compensation earnable' pursuant to section 31461, and therefore must be included as part of a retiring employee's 'final compensation' (§ 31462 or 31462.1) for purposes of calculating the amount of a pension." (*In re Ret. Cases* (2003) 110 Cal.App.4th 426, 435.)

### 1.    The Legislature Enacts Section 31460.1

Section 31460.1—enacted in 1990 and effective at the beginning of 1991—read: " 'Compensation' shall not include employer payments, including cash payments, made to, or on behalf of, their employees who have elected to participate in a flexible benefits program, where those payments reflect amounts that exceed[] their employees' salaries. [¶] This section shall not be operative in any county until the time the board of supervisors shall, by resolution adopted by a majority vote, makes this section applicable in that county."

In December 1990, the Orange County board of supervisors passed Resolution 90-1551, which read in pertinent part: "BE IT RESOLVED this Board does hereby adopt the provisions of

---

[2] We limit our summary to the facts and procedural history relevant to the issues raised on appeal.

4

Government Code section 31460.1 pertaining to the definition of Compensation in the County Employees Retirement Law of 1937, effective January 1, 1991."

## 2. The Legislature Repeals Section 31460.1

In 1992, the Legislature passed Senate Bill 193, repealing section 31460.1.  Section 3 of the bill explained that "The County Employees Retirement Law has, since its original enactment . . . , conferred upon the county retirement boards the duty and power to determine which of the items of compensation paid to county employees . . . would constitute 'compensation earnable,' " and that section 31460.1 "has been erroneously construed as implicitly requiring counties maintaining retirement systems . . . to include in 'compensation' those flexible benefits payments until the board of supervisors elect pursuant to that section to exclude those flexible benefits payments from 'compensation.' "  The Legislature proclaimed that the intent of enacting section 31460.1 was "merely to accord to each county board of supervisors, at its option, the power either to preclude its county retirement board from including those flexible benefits payments in 'compensation,' if the county retirement board had not previously taken such action, or to supersede any previous decision of their county retirement board to include those flexible benefits payments in 'compensation.' "

Therefore, "[i]n order that the source of misconstruction of legislative intent regarding the enactment of Section 31460.1 of the Government Code may be eliminated at the earliest possible time, and that any county actions taken on the basis of that misconstruction may be reversed or terminated at the earliest possible time, the Legislature finds that it is necessary to repeal Section 31460.1 of the Government Code."  However, Section 2 of

5

Senate Bill 193 provided that "Nothing in this act is intended to, or shall be construed to, affect the validity of any action taken by a county pursuant to Section 31460.1 of the Government Code, prior to the effective date of this act."  The act took effect in May 1992.

### 3. Resolution No. 98-001

In February 1998, OCERS's Board of Retirement adopted Resolution 98-001, which provided in pertinent part that "Flexible Benefits ('Cafeteria Plan') to the Extent paid in Cash (applicable to members retiring before January 1, 1991)" would be included in the calculation of "compensation earnable" but that "Flexible Benefits ('Cafeteria Plan') provided in-kind" and "Flexible Benefits ('Cafeteria Plan') paid in cash to the extent paid to members retiring on and after January 1, 1991" would be excluded from the calculation, as would be items "<u>substantially similar</u>."  (Emphasis in original.)  It also provided that the board of retirement "shall apply these policies and guidelines . . . automatically for all members retiring" after October 1, 1997.

### B. *The 2002 Settlement Agreement*

In 2002, a settlement agreement was entered into by Orange County Employees' Association; Retired Employees' Association of Orange County, Inc.; Orange County Attorneys' Association; Jan J. Nolan and Eric W. Snethen (collectively the "Class Representatives"), individually and as members and representatives of a class consisting of all past, present, and future members of the OCERS; the County of Orange; and OCERS.  The agreement stated that the Class Representatives had been selected by the Superior Court of San Francisco "to represent a certified no-opt-out class . . . consisting of all Class

Members." The agreement provided, in pertinent part, that each party thereto "agrees to accept as final and binding the inclusions in and exclusions from compensation, compensation earnable, and final compensation as more particularly set forth in OCERS'[s] Resolution 98-001, as amended by OCERS'[s] Resolution 98-009, and as further amended by OCERS'[s] action adopting its Resolution 00-003 on or about December 18, 2000.[3] It further provided that the agreement was "intended to be complete and final with respect to the issues that it has resolved, and that the terms or applicability of the Agreement will not be changed on behalf of any of the Parties, including the Class Members, in response to later court decisions, whether favorable or unfavorable, to any of the Parties hereto" and that any future cases "that enlarge, define, narrow or in any other way relate to the scope of the decision of the California Supreme Court in *Ventura County Deputy Sheriffs' Association v. Board of Retirement*, 16 Cal. 4th 483 (1997) ('*Ventura County*') or the items of compensation to be included or excluded for benefit purposes under CERL shall have no effect on the terms or applicability of this Agreement."

In November 2002, the San Francisco Superior Court approved the settlement agreement and entered a judgment expressly providing that "all of the terms and provisions of the approved Settlement Agreement . . . shall be binding upon and implemented by all parties to these actions, including all members of the class consisting of all past, present and future members of the Orange County Employees Retirement System."

---

[3] Resolution 98-009 deleted portions of Resolution 98-001 irrelevant to this appeal. Resolution 00-003 does not appear to be in the record.

## C. *The Optional Benefit Plan*

The purpose of "Third Amended and Restated County of Orange Section 125 Plan"—which was effective as of June 1, 2011—was "to offer the eligible employees of the Employer an opportunity to forgo taxable income in exchange for paying premiums for health care coverage on a tax-free basis and for paying for certain health care and dependent care on a tax-free basis."

In the Plan, "OBP" was defined as an "Optional Benefits Program" that was "offered to judges, attorneys who are employed in the 'Attorney Unit', elected officials, executive management, and administrative management where OBP credits can be allocated to pay for certain benefits, including Benefits offered under this Section 125 Plan." Section 3.1 of the plan provided that once an employee elected to participate in the Section 125 Plan, "his or her OBP will be allocated and his or her Compensation will be reduced in an amount equal to the amount of contributions elected pursuant to Section 4." "Compensation" was defined as "the total cash payment received by the Participant from the Employer during a Contribution Period prior to any reductions pursuant to a Salary Redirection Agreement authorized hereunder."

Section 4.3 provided that an "OBP Eligible Employee may elect to receive in taxable cash compensation, the total amount or any portion of OBP Dollars if such OBP Eligible Employee elects to receive all or part of his or her OBP Dollars as taxable cash in his or her Enrollment Documentation each year. Additionally, if an OBP Eligible Employee fails to complete and submit Enrollment Documentation, such OBP Eligible Employee shall be deemed to have elected all of his or her OBP Dollars as taxable

8

cash.  Taxable Cash Benefits shall be paid in one lump sum amount on the first paycheck of the Plan Year."  These provisions remained unchanged in the Fourth Amended and Restated County of Orange Section 125 Plan, which was effective as of January 1, 2013.

In a 2007 version of the Orange County Superior Court Personnel Policies and Regulations, Article X was entitled "Reimbursement Programs," and Section 4 thereunder was entitled "Optional Benefit Plan."  This section stated that "Effective January 1, 2008, each eligible employee shall be entitled to select benefits from those listed below not to exceed three thousand five hundred (3,500) dollars" and provided the following options: (1) "cash"; (2) "professional conferences which are job related (employee only) including fees and other expenses while attending"; (3) "professional memberships, licenses and certificates which are job related (employee only);" (4) "professional journals and periodicals (employee only) which are job related"; (5) "health/accident" (which included health programs not completely covered by insurance, the employee's share of health insurance premiums including accidental death and dismemberment coverage, and other health care expenses not completely covered by insurance); and (6) the county-administered "457 Deferred Compensation Plan."  To participate, an eligible employee was required to file an "Intent to Participate" statement.  If the employee did not file such a form before the plan began, "the employee may only receive cash for any period prior to the first of the month following the date the employee files an Intent to Participate."  The section provided that the "purpose of the plan is to provide options to individual employees to best meet the needs of themselves and dependents

9

while enhancing the employee's expertise and skills on the job." A 2013 version of the plan contained the same provisions, except that the professional conference, membership, and journals options were removed.

### D. *The Board of Retirement Excludes OBP Payments From Morell's Pension Calculation*

In the beginning of 2014, Morell filed an application for service retirement and received a "Retirement Benefit Estimate," setting forth his monthly pension amount and how that amount was calculated. In June 2014, he disputed the calculation, claiming "a $3,500 annual 'optional benefit' was erroneously excluded from the calculation of 'compensation' and/or 'compensation earnable' in determining [his] monthly retirement allowance." Morell explained that the $3,500 was a benefit made available to attorneys working for the Orange County Superior Court and, at the attorney's election, could be allocated in several, non-exclusive ways during an "open enrollment" period: it could be (1) included in the attorney's first paycheck of the year; (2) used to reimburse the attorney for certain medical expenses not covered by insurance on a pre-tax basis; (3) used to pay for supplemental accidental death and dismemberment coverage on a pre-tax basis; or (4) allocated to the attorney's section 457 deferred compensation plan. Should the attorney fail to allocate any part of the funds during open enrollment, the unallocated portion would automatically be paid to the employee in their first paycheck of the year. He argued that regardless of how the $3,500 was allocated, it should be included in the definition of "compensation" for purposes of calculating the employee's retirement benefit.

10

In September 2014, OCERS denied Morell's claim, asserting that "Resolution No. 98-001 as adopted by the Board of Retirement in February 1998 specifically identifies the categories of pay that are included and excluded from a retiring member's compensation earnable" and "specifically excludes flexible benefit payments for employees retiring after January 1, 1991 from being considered compensation earnable." The letter asserted that the OBP payments Morell received constituted a flexible benefit payment and thus was properly excluded from the calculation of compensation earnable.

In a letter that Morell sent in late 2014, he countered that Resolution 98-001's exclusion of the $3,500 OBP payment was at odds with *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483 (*Ventura County*) and other decisional law. He argued that inasmuch as the resolution was based on former section 31460.1—providing that the definition of "compensation" would "not include employer payments, including cash payments, made to, or on behalf of, their employees who have elected to participate in a flexible benefits program"—that language was inapplicable because the OBP was not a program that he had "elected to participate in." Morell contended the OBP was an "integral part of the overall compensation package provided to research attorneys at the Superior Court" and was not a plan that was "elective and which provided payments in excess of employees' normal compensation." Morell also pointed out that section 31460.1 had been repealed.

In a March 2015 letter, OCERS reiterated its stance that the OBP payments were properly excluded under the resolution. It added that because "the Board of Retirement did not anticipate inclusion of flexible benefits in compensation earnable, . . .

11

OCERS did not collect employee or employer contributions based on those benefits" and therefore including the OBP in the calculation of compensation earnable "would have a negative effect on OCERS'[s] actuarial soundness." OCERS also referenced the 2002 settlement agreement in which the settlement class agreed to Resolution 98-001 and argued that "the class represented in the Settlement Agreement includes all past, present, and future members of OCERS," including Morell.

In June 2015, Morell sent another letter to OCERS, asking that his appeal be placed on the board of retirement's agenda to be discussed at a future meeting. The matter was heard at the August 2015 meeting where the board unanimously denied Morell's appeal. Morell appealed this decision and his appeal was heard by a hearing officer in May 2017.

In late 2017, the hearing officer recommended that Morell's appeal be denied, finding that the board of retirement's calculations were correct "in light of the 2002 agreement that settled the litigation between OCERS and its membership class and associations." While the hearing officer found that many of Morell's arguments had merit regarding whether the legal definition of "compensation earnable" should include OBP payments and whether the definition could be changed by a settlement agreement, he concluded that "the Hearing Officer is not empowered to void the settlement agreement in a manner that would enable the Board to recalculate Applicant's retirement benefit allowance in his favor." The hearing officer recommended the board of retirement "reexamine the portion of the settlement that excludes from pensionability flexible benefits received by employees as taxable cash, and that the Board consider pursuing an amendment of the Superior Court judgment on the basis that

12

it precludes taxable cash received under the Optional Benefit Plan from counting in the determination of final compensation."

In an August 2018 meeting, the board of retirement unanimously voted to set aside the Hearing Officer's report and recommendation and directed its staff to prepare "Proposed Findings, Conclusions of Law and Recommended Decision" limited to the board's determination that: (a) OCERS and Morell were bound by the 2002 settlement agreement and judgment; and (b) Morell's retirement allowance was correctly calculated in accordance with the settlement agreement. In an October 2018 meeting, the board adopted the prepared findings and conclusions.

### E.  *Morell Files a Petition for Writ of Mandate*

In January 2019, Morell filed a petition for writ of mandate under Code of Civil Procedure section 1094.5.[4] In May 2021, the court granted Morell's petition in part. It found that "[b]ecause retirement boards and systems have no authority to enter an agreement that would require them to pursue a policy that conflicts with CERL, Petitioner [Morell] could not waive—in a settlement agreement with OCERS—an argument that OCERS'[s] calculation of Petitioner's pensionable compensation contravenes CERL" and therefore the "Board prejudicially abused

---

[4] The petition was originally filed in Orange County Superior Court. In June 2019, the Orange County Superior Court transferred it to Los Angeles Superior Court pursuant to section 69740, subdivision (b), which provides in pertinent part: "In appropriate circumstances, upon agreement of the presiding judges of the courts, and in the discretion of the court, the location of a session may be outside the county . . . ."

its discretion by upholding OCERS'[s] calculation of Petitioner's retirement allowance based solely on the Settlement Agreement and Judgment." The court ordered the board of retirement "to set aside its decision dated October 18, 2018, and to reconsider the case in light of this court's ruling and judgment." The court also ordered that the "Board shall not limit the issues for consideration to (1) whether OCERS and Petitioner were bound by the 2002 Settlement Agreement and the judgment entered thereon, and (2) whether Petitioner's retirement allowance had been calculated in accordance with the Settlement Agreement and judgment" but instead should "decide Petitioner's contentions that OCERS improperly excluded OBP benefits from the calculation of his final compensation separate and apart from the Settlement Agreement." In July 2021, the court issued a judgment and a writ to this effect. The board did not appeal.

## F. *The Board Again Denies Morell's Appeal*

At a December 2021 meeting, in arguing that the OBP payments should be included in the calculation of compensation, Morell contended that he did not "elect" to participate in the OBP. He explained that the OBP payments were a "benefit," that when he was hired, he was told, "you get this salary plus you get this $3500." He also admitted that if he had not chosen to allocate the $3,500 to various categories, he would have received the $3,500 "as cash."

After hearing argument presented by both Morell and the OCERS staff attorney, the board of retirement again unanimously voted to find that it properly excluded all OBP payments from the calculation of Morell's compensation and directed its staff to prepare proposed findings and a decision to

14

that effect.  In a January 2022 meeting, the board adopted the prepared findings and conclusions.

The board found that "the Orange County Board of Supervisor's [*sic*] Resolution 90-1551 . . . remains valid and continues the validity of Section 31460.1 currently in the County of Orange" and that "[b]y adopting Section 31460.1 by Resolution 90-1551, the County precluded the OCERS Board from including flexible benefit payments such as OBP benefits in a member's compensation, compensation earnable and final average salary." It also found that Morell "elected to participate in the OBP program by allocating the $ 3,500 OBP Dollars to the Health Care Reimbursement Account and to lump sum taxable cash payments each year during his measuring period."  It therefore concluded that OCERS's "exclusion of OBP benefits (both for health and dental reimbursements and taxable cash payments within the three year measuring period) from the Applicant's compensation and compensation earnable complied with the CERL at the time the Applicant retired in 2014, according to Section 31460.1, the County's Resolution 90-1551, SB 193's savings clause, and the Board's Resolution 98-001 (which is based in part on County's Resolution 90-1551), notwithstanding the 2002 Settlement Agreement."

### G.  *Morell Files a Second Petition for Writ of Mandate*

In April 2022, Morell filed a second petition for writ of mandate against the board of retirement.[5]  He alleged that he worked for the Orange County Superior Court from August 1992

---

[5] The petition was again filed in Orange County and transferred to Los Angeles County.

15

to February 2014, during which time he participated in the OBP. In 2012, Morell allocated $700 to a healthcare reimbursement account and $2,800 to cash; in 2013, he allocated $2,500 to the healthcare reimbursement account and $1,000 to cash; and in 2014, he allocated $1,100 to the healthcare reimbursement account and $2,400 to cash. However, when Morell retired in 2014, the entire $3,500 benefit was excluded from "compensation" and "compensation earnable" in determining Morell's pension payments. Morell asked the court to order the board "to perform its duty to include all cash OBP payments in 'compensation earnable' and 'final compensation,' and to recalculate Petitioner's retirement allowance accordingly." The board answered the petition in November 2022.

In January 2023, Morell filed his opening brief, arguing that CERL required the inclusion of flexible benefit payments paid in cash into the calculation of a retirement benefit allowance. Morell disagreed that the exclusion of the OBP payments could be justified by Resolutions 90-1551 or 98-001 because the Legislature had repealed section 31460.1 on which those two resolutions were based, and the "savings clause" of Senate Bill 193 did not "save" either resolution. Morell also pointed out that section 31460.1 was applicable only to employees who "elected to participate in a flexible benefits program," and that he had not done so.

In its opposition, the board maintained that the "Orange County Board of Supervisors' Resolution 90-1551 adopted the exclusion of OBP payments from the definition of 'compensation' pursuant to former Government Code § 31460.1's 'carve-out' provision and the 1992 Senate Bill 193's savings clause, and that resolution remains valid and enforceable to this day." It also

16

argued that, by submitting enrollment documentation and electing how to allocate his OBP money, Morell elected to participate in the program. In his reply, Morell countered that electing how to allocate the OBP benefit was not the same as electing to participate in the OBP—he maintained that he had no choice but to participate in the OBP, he did not elect to do so.

In March 2023, the court granted Morell's second petition for writ of mandate. It found that the phrase "any action taken by a county" in section 2 of Senate Bill 193 referred to "the processing and payment of retirement benefits" and not, as OCERS insisted, to the Board of Supervisors' passing of Resolution 90-1551. The court rejected OCERS's argument that "the county board of supervisors, at its option, retained the power either to preclude its county retirement board from including flexible benefits payments in 'compensation,' " finding that such an interpretation "cannot be squared with the subsequent holdings in Ventura, supra, 16 Cal.4th at 487, requiring items of compensation paid in cash to be included in the final compensation on which an employee's pension is based, and Alameda [County Deputy Sheriff's Association v. Alameda County Employees' Retirement Association (2002)] . . . 9 Cal.5th . . . [1032,] 1067, finding that it is the Legislature that has final authority to establish the provisions governing the award of pension benefits under CERL."

The court therefore found that OCERS "prejudicially abused its discretion in concluding that 'Resolution 90-1551, as action taken by the county prior to May 11, 1992, remains valid and continues the validity of Section 31460.1 currently in the County of Orange' " and "also prejudicially abused its discretion in finding that 'OCERS'[s] staff's exclusion of OBP benefits . . .

17

complied with the CERL at the time the Applicant retired in 2014, according to Section 31460.1, the County's Resolution 90-1551, SB 193's savings clause, and the Board's Resolution 98-001 (which is based in part on County's Resolution 90-1551).' "[6] The court stated it would issue a writ "directing [the OCERS] Board to set aside its final decision dated January 20, 2022, and to reconsider that decision in light of this court's ruling." It specified that "[o]n reconsideration, Board shall not rely on repealed Government Code section 31460.1, County Resolution 90-1551, or Board Resolution 98-001 in its calculation of Petitioner's 'compensation' and 'compensation earnable' " and "shall recalculate Petitioner's retirement allowance in conformance with the definitions of 'compensation earnable' and 'final compensation' in CERL, as interpreted in Ventura County Deputy Sheriffs' Association v. Board of Retirement (1997) 16 Cal.4th 483, and in a manner not inconsistent with this court's ruling." In April 2023, the court issued such a writ. The board timely appealed.

---

[6] The inquiry in a petition for writ of mandate brought under Code of Civil Procedure section 1094.5 "shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).)

## DISCUSSION

### A.  *Senate Bill 193's Savings Clause Includes Actions Taken by the Board of Supervisors*

In addition to repealing section 31460.1, Senate Bill 193 also provided that "[n]othing in this act is intended to, or shall be construed to, affect the validity of any action taken by a county pursuant to Section 31460.1 of the Government Code, prior to the effective date of this act."

OCERS contends that "any action taken by a county pursuant to Section 31460.1" included the board of supervisors' passing of Resolution 90-1551.  It argues that because section 2 of Senate Bill 193 referred to actions taken pursuant to section 31460.1 and "the only action stated in the statute was for the county board of supervisors, not the county board of retirement," the "county" in the clause must refer to actions taken by the board of supervisors.

The trial court rejected this view, finding that when section 3 of Senate Bill 193 was "read in full," it demonstrated that "the Legislature equated 'county actions,' at least in some instances, with the processing and payment of retirement benefits." Presumably, the court found that "county actions" therefore did not include the board of supervisors' passing of Resolution 90-1551.

Morell argues that "county" "cannot be read exclusively as 'county board of supervisors' when 'county' is clearly given other meanings in subsections (1) and (4) of Section 3" in Senate Bill

19

193.[7]  He points out that the "Legislature chose to omit 'board of supervisors' from Section 2 even though that term had been employed in section 31460.1, utilizing instead the broader terms 'any action' and 'county' and thereby indicating an intent for the saving clause to include actions other than a board of supervisors' prior adoption of the statute."

The question of whether section 2 of Senate Bill 193 "saved" Resolution 90-1551 is a question of law that we review de novo.  (*Molina v. Board of Administration, etc.* (2011) 200 Cal.App.4th 53, 61.)  We agree with Morell that the term "county" in section 2 is not limited to the "county board of supervisors."  However, we do not see why the term must *exclude* "county board

---

[7] Subdivision (1) of section 3 in Senate Bill 193 reads: "The County Employees Retirement Law has, since its original enactment in 1937 by Chapter 677 of the Statutes of 1937, conferred upon the county retirement boards the duty and power to determine which of the items of compensation paid to county employees who are members of the county retirement associations or systems would constitute 'compensation earnable,' which, in turn, generally determines the amounts of the retirement allowances of retiring members (see Guelfi v. Marin County Employees' Retirement Assn., 145 Cal.App.3d 297 at pages 303, 305, and 307 fn. [*sic*])."

Subdivision (4) of section 3 in Senate Bill 193 reads: "That interpretation was not intended by the Legislature when it enacted that section.  Had that been the intent of the Legislature when it enacted Assembly Bill 3146, it would have been a substantial departure from the long-standing practice of the Legislature of not intruding into the county decisionmaking process regarding compensation determinations with respect to those county retirement systems (see Sections 31460 and following, Government Code)."

of supervisors" or be limited to "county board of retirement," as the trial court seems to have found. Indeed, subdivision (6) of section 3 of Senate Bill 193 provides that the Legislature's intent in enacting section 31460.1 was "merely to accord to each *county board of supervisors*, at its option, the power either to preclude its *county retirement board* from including those flexible benefits payments in 'compensation,' if the *county retirement board* had not previously taken such action, or to supersede any previous decision of their *county retirement board* to include those flexible benefits payments in 'compensation.' " (Italics added.) Given that the Legislature referred both to the "county board of supervisors" and the "county retirement board" in Senate Bill 193 and thus clearly knew how to delineate a specific entity when it wished, we conclude that the term "county" in section 2 includes *both* the county board of supervisors *and* the county retirement board. As such, it includes actions taken by the board of supervisors pursuant to section 31460.1.

### B. *Resolution 90-1551 Preserves Section 31460.1's Definition of "Compensation"*

Morell "has never disputed that SB 193 preserved the validity of Resolution 90-1551." Instead, citing *Ransome-Crummey Co. v. Bennett* (1918) 177 Cal. 560, Morell argues that "the OBP exclusion authorized by former Government Code section 31460.1 became inoperative in Orange County following the repeal of section 31460.1 in 1992, even though Resolution 90-1551 itself may have remained retrospectively." We find *Ransome-Crummey* inapposite.

San Jose's city charter incorporated a state statute; a portion of that statute was later repealed. *Ransome-Crummey* dealt—in part—with whether the city's charter still included the

21

repeated portion.  Specifically, San Jose's city charter had incorporated the "general street law, commonly known as the Vrooman Act," where not inconsistent with the charter itself. (*Ransome-Crummey Co. v. Bennett*, *supra*, 177 Cal. at p. 563.) Section 20 of the Vrooman Act "substantially provided that whenever any street or portion thereof has been or shall be fully constructed to the satisfaction of the superintendent of streets and of the city council, and is in good condition throughout, etc., the same shall be accepted by the city council, by ordinance, and thereafter shall be kept in repair and improved by the city." (*Ransome-Crummey Co.*, at p. 566.)  Our Supreme Court found that the Legislature's repealing of section 20 of the Vrooman Act "struck dead the ordinance of acceptance."  (*Ransome-Crummey Co.*, at p. 567.)

The respondent in *Ransome-Crummey* argued that because "the charter of San Jose in 1897 adopted the Vrooman Act as part of itself, that act became a part of the charter, beyond legislative control, and that consequently the repeal by the legislature of section 20 did not affect the validity and vitality of that section, so made a part of the charter, which continued to be the subsisting law of San Jose."  (*Ransome-Crummey Co. v. Bennett*, *supra*, 177 Cal. at p. 567.)  Our Supreme Court rejected this argument.  While acknowledging that San Jose's charter was amendable only as provided by the California Constitution, it noted that San Jose's charter had adopted the Vrooman Act " 'as since amended and *as hereafter shall be amended.*' "  (*Ibid.*, italics added.)  Thus, because the charter "expressly provides that that enactment as thereafter it may be modified by the general legislature shall still be the controlling law of the municipality, such modification by way of amendment of the general law which

22

the legislature may enact is not within the prohibition of the constitution, . . . and it is therefore held that the legislative repeal of section 20 of the Vrooman Act operated to repeal the power conferred upon the city of San Jose in the matter under consideration." (*Ibid.*)

There was no mention in *Ransome-Crummey* that the bill repealing section 20 of the Vrooman Act contained a savings clause as was in Senate Bill 193. Moreover, Resolution 90-1551 adopted the "provisions of Government Code section 31460.1 pertaining to the definition of Compensation"—not those provisions "as hereafter shall be amended." In other words, unlike San Jose's city charter that made clear it was adopting not only the Vrooman Act as it existed at that time but also any future modifications, the Orange County board of supervisors adopted only the definition of "Compensation" contained in section 31460.1 at the time the resolution was passed. And, because Senate Bill 193 provided that nothing in the bill would affect actions taken by a county under section 31460.1—such as the adoption of the definition of compensation provided therein—that definition survived the repeal of section 31460.1 itself.[8]

_____

[8] Morell argues that the "savings clause" of Senate Bill 193 "cannot reasonably be construed in a manner consistent with statutory amendment, when the remainder of SB 193 clearly reflects an intent to repeal." We do not see why it would be unreasonable for the Legislature to permit counties who had enacted resolutions adopting section 31460.1's definition of "Compensation" to keep such resolutions. Such an action would be precisely in line with the stated intent behind enacting section 31460.1: "[T]o accord to each county board of supervisors, at its option, the power . . . to preclude its county retirement board from including those flexible benefits payments in

*(Fn. is continued on the next page.)*

23

*Ventura County* does not state otherwise. There, our Supreme Court distinguished between benefits provided "in-kind" and those paid in cash and generally held that, "[t]he Legislature has recognized that some employees receive remuneration other than wages or salary but has concluded that if those 'advantages' are not paid in cash, their value need not be included in 'compensation' for purposes of computing a pension. It has not done so for cash payments made in lieu of providing the same advantages in kind. When paid in cash, the payment is remuneration and, as it is not excluded, it is 'compensation' under section 31460." (*Ventura County, supra,* 16 Cal.4th at p. 497.)

But it is undisputed that CERL contains provisions excluding benefits potentially paid to the employee in cash from the calculation of "compensation." For example, section 31461.1 provides that, for "a county of the first class"—currently, only Los Angeles County—"Notwithstanding Sections 31460 and 31461, neither 'compensation' nor 'compensation earnable' shall include any of the following: cafeteria or flexible benefit plan contributions, transportation allowances, car allowances, or security allowances, as enumerated in a resolution adopted

'compensation.' " (Stats. 1992, ch. 45, § 3(6).) Moreover, the Legislature repealed section 31460.1 not because it wanted those flexible benefits payments included in the "Compensation" calculation, but because the section had been "erroneously construed as implicitly requiring counties maintaining retirement systems under the 1937 act to include in 'compensation' those flexible benefits payments until the board of supervisors elect pursuant to that section to exclude those flexible benefits payments from 'compensation.' " (Stats. 1992, ch. 45, § 3(3).)

24

pursuant to subdivision (c)."[9]  (See also §§ 31461.4 & 31461.45 [further defining "compensation" and "compensation earnable" for "a county of the first class"].)  Neither *Ventura County* nor any case of which we are aware has held that these provisions are invalid.  Thus, while local ordinances cannot contradict CERL, inasmuch as Resolution 90-1551 was authorized by CERL when it was passed and preserved by Senate Bill 193, it does not contradict CERL, and has not been invalidated by *Ventura County* or any other case.[10]

---

[9] Subdivision (c) discusses how the section can become operative.  (§ 31461.1, subd. (c).)  While the statute discusses "cafeteria or flexible benefit plan contributions," these contributions are typically paid back to an employee in cash.  "Cafeteria plan selections include . . . flexible spending accounts . . .  and cash benefits."  (Investopedia <https://www.investopedia.com/terms/c/cafeteriaplan.asp> [as of July 9, 2024], archived at <https://perma.cc/Q3SC-KEQ3>.)  A flexible spending account "allows you to contribute a portion of your regular earnings before tax; employers also can contribute to employees' FSAs.  Distributions from the account must be used to reimburse the employee for qualified expenses related to medical and dental services."  (Investopedia <https://www.investopedia.com/terms/f/flexiblespendingaccount.a sp> [as of July 9, 2024], archived at <https://perma.cc/3W8U-WGPX>.)

[10] Morell also argues that Resolution 90-1551 is not "self-executing" in that it "does not by its terms exclude OBP payments from the calculation of retirement allowances" and "could only be given effect through the further actions of" OCERS, which occurred after the enactment of Senate Bill 193.  We are unpersuaded.  While it is true that the processing of Morell's retirement application occurred well after Senate Bill

*(Fn. is continued on the next page.)*

25

## C. *Resolution 90-1551 Applies to Morell*

As discussed above, Resolution 90-1551 excludes only "payments, made to, or on behalf of, . . . employees who have elected to participate in a flexible benefits program, where those payments reflect amounts that exceed[] their employees' salaries." Having concluded that Resolution 90-1551 is still valid, we must determine whether Morell elected to participate in the OBP, and whether the payments therefrom reflected amounts that exceeded his salary. We answer both questions affirmatively.

### 1. Morell Elected to Participate in the OBP

Morell argues that because he had no choice but to participate in the OBP, he cannot be considered to have "elected" to participate in the plan. But the record belies his claim.

Although the OBP was a benefit offered to Morell, it was not mandatory; he had to elect to participate in it. Once he elected to participate, he further had to elect how to allocate the $3,500 he had chosen yearly to be placed in the OBP. It is undisputed that, for each year relevant to this appeal, Morell allocated some of the $3,500 in OBP payments to a healthcare reimbursement account, and the rest to cash. Morell also admits that if he had not made these allocations, then he would have "received the full annual benefit under the OBP program [i.e., the

_____

193, the board of supervisors' passing of Resolution 90-1551— excluding OBP payments from the definition of compensation— occurred before. The board of supervisors validly excluded certain payments from the definition of compensation, and Senate Bill 193 preserved that exclusion. We do not know what other "execution" was required.

26

$3,500], even though he did not 'elect' to do so or to otherwise participate in the program." In other words, Morell had a choice—he could choose to participate in the program and save on taxes by having certain medical expenses reimbursed on a pre-tax basis (thereby reducing his taxable salary), or he could, in essence, "opt out" of the program by making no elections, in which case he would have received the $3,500 in taxable cash as part of his first paycheck of the year. We need not and do not decide whether "opting out" in this fashion would cause the $3,500 OBP benefit to fall out from the auspices of Resolution 90-1551, because Morell did not "opt out." Instead, he elected to participate in the OBP by allocating the $3,500 into permissible categories.

### 2. The OBP Payments Reflect Amounts That Exceeded His Salary

Orange County's Section 125 Plan provided that after an eligible employee elected to participate in the OBP, "his or her Compensation will be reduced in an amount equal to the amount of contributions elected pursuant to Section 4." As discussed above, Morell elected to participate in the OBP by allocating the $3,500 between a healthcare reimbursement account and taxable cash. His "Compensation"—defined as the total cash payment received by the Participant from the Employer during a Contribution Period before any reductions pursuant to a Salary Redirection Agreement—was thus reduced by $3,500. Therefore, the payments he received under the OBP reflect amounts that exceeded his salary. Morell himself admitted this when he informed the board of retirement that, when he was hired, he was told that "you get this salary plus you get this $3500."

27

Morell admits that the requirement that the OBP payment reflect an amount that exceeds his salary "might be construed to have been met in this case, on the ground that the OBP payments received by Respondent were not paid regularly and therefore technically were not salary." Nevertheless, he urges us to focus on the fact that the payments were required to "reflect" amounts that exceeded his salary, arguing that the use of that word "suggests that the clause was intended to refer not to the salaries actually paid to employees with flexible benefit plans, but rather to the salaries which would have been paid in the absence of the flexible benefit plan." In other words, Morell appears to be arguing that, if the OBP did not provide a $3,500 benefit to him, then his salary would have been $3,500 higher, and therefore the $3,500 OBP payment does not "reflect" an amount that exceeded his salary.

We reject Morell's contention. Morell provides no authority to support his theory that the Legislature's choice of the word "reflect" had any special meaning. Nor do we see how use of "reflect" transforms "amounts that exceed[] their employees' salaries," which Morell concedes the OBP payments were, into "amounts that exceed[] what their employees' salaries would have been had they not elected to participate in the flexible benefit program." Further, as explained above, Morrell elected to participate in the flexible benefit program, and we thus need not analyze a speculative fact pattern that does not apply to his case. We therefore conclude that the OBP payments in question reflected amounts that exceeded Morell's salary.

## DISPOSITION

The judgment in favor of Morell is reversed.  On remand, the trial court is directed to enter a judgment denying his petition.  Appellant is awarded its costs on appeal.

CERTIFIED FOR PUBLICATION



CHANEY, J.

We concur:


ROTHSCHILD, P. J.


WEINGART, J.